911 P.2d 553

**LABOR FORCE, Petitioner Employer,**

**Insurance Company of North America, Petitioner Carrier,**

v.

**The INDUSTRIAL COMMISSION of Arizona, Respondent,**

**Tradewinds, Respondent Employer,**

**St. Paul Marine & Fire, Respondent Carrier,**

**David Cooper, Respondent Employee.**

No. 1 CA–IC 94–0065.

Court of Appeals of Arizona, Division 1, Department C.

Aug. 10, 1995.

Reconsideration Denied Sept. 6, 1995.

Review Denied Feb. 21, 1996.*

---

* Corcoran, J., of the Supreme Court, did not participate in the determination of this matter.

Long, Lundmark & Poppe, P.A. by James B. Long, Phoenix, for petitioners.

Anita R. Valainis, Chief Counsel, The Industrial Com'n of Arizona, Phoenix, for respondent.

Page & Hommel, L.L.P. by Robert J. Hommel, Phoenix, for respondents Employer and Carrier.

Jerome, Gibson, Stewart, Friedman, Stevenson & Engle by Darryl Engle, Phoenix, for respondent Employee.

## OPINION

EHRLICH, Judge.

This is a review of a consolidated Arizona Industrial Commission ("Commission") award and decision upon review for a com-

pensable claim against the petitioner employer, Labor Force, and its carrier, Insurance Company of North America, and for a non-compensable claim against respondent employer, Tradewinds, and its carrier, St. Paul Marine & Fire.[1] Compensability is accepted. The sole dispute is whether responsibility for coverage falls on Labor Force and/or Tradewinds.

Labor Force presents three issues: First, whether Tradewinds, the special employer, is exclusively responsible for workers' compensation coverage under the lent-employee doctrine; second, whether the Commission has jurisdiction to enforce an alleged agreement between Labor Force and Tradewinds imposing exclusive responsibility for workers' compensation coverage on Labor Force; and, third, whether the record supports a finding that Labor Force and Tradewinds had an enforceable agreement imposing exclusive responsibility on Labor Force. For the reasons which follow, we conclude that Tradewinds is exclusively responsible for workers' compensation because Labor Force, which acted only as a payroll service, did not have the right to control the details of the work of the respondent employee/claimant, David Cooper, for Tradewinds. We also conclude that the Commission lacks jurisdiction to enforce any agreement between Labor Force and Tradewinds imposing exclusive liability on Labor Force. We accordingly set aside the award and decision upon review without addressing whether the record supports the finding that an enforceable agreement existed.

## FACTUAL AND PROCEDURAL HISTORY

Tradewinds, a manufacturer of evaporative coolers, employed core employees and also temporary workers. Accordingly, it contracted with temporary services employers, including Labor Force,[2] which would employ temporary workers and assign them to Tradewinds. Some of the temporary workers, however, worked for Tradewinds for months at a time; these workers became employees of whichever temporary services employer Tradewinds then was using. The temporary services employer paid the temporary workers and provided workers' compensation coverage for them, charging Tradewinds for its costs plus a percentage for profit.

Cooper was one of the long-term temporary workers; he had been "employed" by at least two temporary services employers while working for Tradewinds in 1992, including Labor Force. During the season, he did assembly work. Unless notified by Tradewinds that his services would not be needed, he reported to work for Tradewinds without contacting the temporary services employer. Labor Force did not have a supervisor at Tradewinds; only Tradewinds' personnel supervised and controlled Cooper while he worked for it.

On July 16, 1992, Cooper became a Labor Force employee when an employment application he completed at Tradewinds was sent to Labor Force. Two weeks later, seasonal work for Tradewinds ended. At the beginning of August, Labor Force assigned Cooper to work for two other employers. Then, on August 20, responding to a call directly from Tradewinds' plant manager, Cooper returned to Tradewinds to do maintenance work on roof coolers. On August 24, while doing this work, he fell through a skylight and was injured. Labor Force paid him and billed Tradewinds for Cooper's work on August 20 but not for his work on August 24.

Cooper filed a workers' compensation claim against Labor Force, which was denied. He then filed a claim against, among others, Tradewinds, which also was denied. He timely protested both denials and the claims were consolidated for hearing. Because Cooper's entitlement to benefits was

---

1. The award also denied a claim against another employer and its carrier. They have been dismissed as parties to this special action.

2. In March 1992, Labor Force, Inc., was providing some temporary workers to Tradewinds. On April 20, 1992, Catellier Enterprises, Inc., acquired a license to use the name "Labor Force" and began a temporary services business. The record is unclear whether Labor Force, Inc., employed Cooper before April 1992 or whether it, Labor Force or some other temporary services employer employed Cooper between April and July 1992.

undisputed, the Commission conditionally assigned responsibility to Tradewinds. *See* Ariz.Rev.Stat.Ann. ("A.R.S.") § 23–1061(K).

Pending a hearing, Tradewinds filed a copy of an undated indemnification agreement between Labor Force and Tradewinds, which was signed by an unidentified person. Labor Force objected to the admissibility of this document but the Administrative Law Judge ("ALJ") never ruled on this point.

At the hearings, several witnesses appeared, including Cooper, Labor Forces president Gary Catellier, Labor Force account representative Marian McCarthy and a manager for the temporary services employer that succeeded Labor Force. Much of the testimony concerned Labor Force's denial that it employed Cooper on August 24, 1992. Labor Force now concedes that it was Cooper's general employer.

Cooper testified that he did not care what temporary services employer employed him while he worked for Tradewinds. He had changed to Labor Force at Tradewinds' direction and without any personal contact with Labor Force. Labor Force did not supervise his work; he was exclusively under Tradewinds' direction and control. According to Cooper, Tradewinds normally would contact him directly to return to work after a lay-off. Although he usually did assembly work, he had performed cooler maintenance for the company. Cooper was not asked whether he knew about a Labor Force safety policy.

Catellier testified that he dealt with Tradewinds' manager, who placed job orders for assemblers, which Labor Force filled with temporary workers. Catellier explained that the job classification affected Labor Force's workers' compensation rate and, in turn, the amount it charged Tradewinds. Labor Force and Tradewinds had no written indemnity agreement, although Catellier believed that an oral agreement existed requiring Labor Force to provide full workers' compensation coverage for temporary assembly workers assigned to Tradewinds. He testified that Tradewinds exclusively supervised its temporary workers and that Labor Force did not control Cooper's work for Tradewinds, adding, however, that Labor Force had a

written safety policy given its employees prohibiting them from working at heights over four feet. He did not know if Tradewinds knew of the policy.

McCarthy confirmed that agreements requiring temporary services employers to provide full workers' compensation coverage for their employees doing assigned jobs were the industry standard. She corroborated that Labor Force had a safety policy and described it as usual in the industry. In her opinion, if a Labor Force employee violated the policy, the client employer was responsible for workers' compensation. She, too, did not know if Tradewinds knew of the policy.

The manager for the successor temporary services employer confirmed that an indemnity agreement is customary with large clients. The successor had a written contract with Tradewinds requiring the temporary services employer to provide full workers' compensation coverage and it charged Tradewinds for this expense.

After the hearings, the parties submitted memoranda. Tradewinds conceded that it was Cooper's special employer. However, it asserted (1) that Labor Force was Cooper's general employer; (2) that both Tradewinds and Labor Force were responsible for workers' compensation because both satisfied the test for liability under the lent-employee doctrine; (3) that the Commission had jurisdiction to enforce an agreement between potentially liable employers that one would be exclusively liable; and (4) that Labor Force and Tradewinds had an enforceable agreement requiring Labor Force to provide full workers' compensation coverage.

The ALJ then issued the consolidated award. He found that "Labor Force was the general employer of the applicant on August 24, 1992 and further that Labor Force is exclusively responsible for the injury to the applicant that occurred on August 24, 1992." Accordingly, he awarded a compensable claim against Labor Force and denied any benefits on the claim against Tradewinds.

Labor Force requested review. It accepted responsibility as Cooper's general employer but asserted (1) that Tradewinds, as Cooper's special employer, was exclusively liable

for workers' compensation under the lent-employee doctrine; (2) that the Commission lacked jurisdiction to enforce an agreement between employers to shift responsibility from the employer liable under workers' compensation law to another employer; and (3) that the record failed to support the finding that Labor Force and Tradewinds had an enforceable agreement requiring Labor Force to provide full workers' compensation coverage.

The ALJ issued a Decision Upon Review, affirming the award with these supplemental findings:

5. The undersigned finds that the testimony and evidence supporting the existence of a hold over agreement for the applicant's continued employment through Labor Force through October 1, 1992 is more credible and persuasive than the testimony of Gary Catellier and Marian McCarthy disputing the existence of a hold over agreement. The undersigned finds that the applicant was performing services at Tradewinds on August 24, 1992, through his general employment as a temporary laborer from Labor Force.

6. The undersigned finds that Labor Force agreed to provide complete workmans compensation coverage for its employees sent to Tradewinds on August 24, 1992. The testimony of Gary Catellier and Marian McCarthy that the agreement for coverage did not include the work being performed by the applicant on August 234, 1992 is not credible, and is not supported by any other persuasive evidence. The testimony of Richard Hobson that there were no restrictions on the work that Labor Force workers could perform at Tradewinds is more credible and adopted.

7. The undersigned finds that the applicant had a contract of hire with Labor Force on August 24, 1992 to provide contract labor services on behalf of Labor Force. That at the time of the injury, the applicant was performing the work of Labor Force, namely contract labor services. Labor Force claims, and had, a right to control the details of the work consisting of dates of performance, times of performance, places of performance and work

performed; however, in this case it was previously found that Labor Force did not preclude the applicant from performing the work he was performing at the time of the injury, although it may have had a right to do so. On this basis Labor Force is a general employer and liable for workmans compensation coverage.

8. Pursuant to Labor Force's agreement to provide 100% coverage for industrial injuries to its employees sent to Tradewinds, Labor Force is exclusively responsible for the injury to the applicant.

Labor Force then brought this special action.

## DISCUSSION

On review, Labor Force again asserts that Tradewinds, as special employer, is exclusively responsible for Cooper's workers' compensation under the lent-employee doctrine, that the Commission lacks jurisdiction to enforce an agreement between employers allocating responsibility for workers' compensation, and that the record failed to support the finding that Labor Force and Tradewinds had an enforceable agreement requiring Labor Force to provide full workers' compensation coverage.

### A. Lent–Employee Doctrine

Under the lent-employee doctrine, [w]hen a general employer lends an employee to a special employer, the special employer becomes liable for workmen's compensation only if:

(a) the employee has made a contract of hire, express or implied, with the special employer;

(b) the work being done is essentially that of the special employer; and

(c) the special employer has the right to control the details of the work.

When all three of the above conditions are satisfied in relation to both employers, both employers are liable for workmen's compensation.

1B Arthur Larson, THE LAW OF WORKMEN'S COMPENSATION ("Larson") § 48.00 (1995). Arizona cases have approved this test. *E.g.,*

*Word v. Motorola*, 135 Ariz. 517, 520, 662 P.2d 1024, 1027 (1983).

In the rudimentary case, a general employer with its own trade or business lends an employee to a special employer with its own trade or business. *See* Larson, § 48.21. Because the special employer truly substitutes for the general employer, the special employer alone is liable for workers' compensation. *See id.* at §§ 48.14, 48.21. In an early Arizona case of this type, the supreme court adopted this rule of substituted liability:

> [I]f ... the general employer relinquishes the services and control of an employee so that the employee becomes for the time being subject to the supervision with another, the latter becomes liable for compensation for an injury sustained in the course of such work, and the general employer is absolved from liability therefor.

*Carnes v. Industrial Comm'n*, 73 Ariz. 264, 267, 240 P.2d 536, 538 (1952). When, however, a general employer is in business to lend employees, the substitution of a special employer for the temporary services employer is less clear. *See* Larson, § 48.23.

> [I]f ... the general employer merely arranges for labor without heavy equipment, the majority of the cases hold that the worker becomes the employee of the special employer, although there is substantial *contra* authority. For example, employers obtaining workers from the kind of labor service typified by Manpower, Inc. have usually, but not invariably, been held to assume the status of special employer.

*Id.* at 8–515 to 8–532 (footnotes omitted). Most of the cases supporting this statement address whether the client employers are special employers immune from civil suit, not whether they substitute for the general employers and therefore are exclusively responsible for workers' compensation. *See id.* at nn. 65–66.1.

Immunity from civil suit, however, does not equate with exclusive responsibility; the general employer supplying the worker may remain jointly responsible for workers' compensation. Even if general and special employers are jointly responsible, the responsibility of the special employer may be primary and that of the general may be secondary. *E.g., Chicago's Finest Workers Co. v. Industrial Comm'n*, 61 Ill.2d 340, 335 N.E.2d 434, 437 (1975) (construing statute imposing joint and several liability on general and special employers). Because joint responsibility results in joint and several liability, *see Faraghar v. Industrial Comm'n*, 184 Ariz. 528, 911 P.2d 534 (App., 1995), a case involving a claim against only one of the employers does not determine their relative responsibility.

Several Arizona cases involve general employers which only lend employees to client employers. In all but one, the injured workers filed workers' compensation claims against the general employers and then sued the client employers. These cases therefore address only whether the client employers are special employers immune from civil suit, not the relative responsibility of the general and special employers for workers' compensation. *See Word*, 135 Ariz. at 520, 662 P.2d at 1027 ("When these factors [stated by Larson] are met, the 'special employer' becomes an 'employer' and, like other employers liable for workmen's compensation, may be entitled to the benefit of the statutory immunity given complying employers."); *Araiza v. U.S. West Business Resources, Inc.*, 183 Ariz. 448, 448–54, 904 P.2d 1272, 1272–78 (App. 1995) (client employer enjoyed tort immunity as special employer; worker could have filed compensation claim against this employer); *Avila v. Northrup King Co.*, 179 Ariz. 497, 499–505, 880 P.2d 717, 719–25 (App.1994) (discussion of client employer as special employer entitled to tort immunity); *Lindsey v. Bucyrus–Erie*, 161 Ariz. 457, 458–59, 778 P.2d 1353, 1354–55 (App.1989) (addressing immunity of construction equipment seller from civil suit by temporary employee supplied by temporary services employer); *Nation v. Weiner*, 145 Ariz. 414, 417–420, 701 P.2d 1222, 1225–28 (App.1985) (addressing immunity of hospital from civil suit by nurse supplied by medical personnel services employer).

In the one exception, although the injured worker filed compensation claims against both the general and special employers, he

was injured while performing administrative work exclusively for the general employer. *See Growers Co. v. Industrial Comm'n,* 173 Ariz. 309, 311–12, 842 P.2d 1322, 1324–25 (App.1992). Liability was imposed on the general employer for this reason alone. *Id.* at 312–13, 842 P.2d at 1325–26; *see also* Larson, § 48.24.

In contrast, in the current case, Cooper was injured while working for the special employer, Tradewinds. He also filed claims against both Labor Force and Tradewinds. This case therefore presents the issue of the relative responsibility of the general and special employers.

Labor Force argues that the traditional substitution of special employer for general employer should apply to this case. Tradewinds clearly is a special employer. Labor Force notes that Cooper was injured while performing Tradewinds' maintenance work under Tradewinds' actual direction and control. Furthermore, Cooper's knowing acceptance of this supervision and control establishes an implied contract of hire with Tradewinds. *E.g., Lindsey,* 161 Ariz. at 459, 778 P.2d at 1355.

While Tradewinds concedes that it was Cooper's special employer, it argues that both employers are liable for workers' compensation. We disagree.

The first factor under Larson's tripartite test requires a contract of hire between Labor Force and Cooper. Although Labor Force originally denied that an employment relationship existed between it and Cooper on August 24, 1992, it now concedes that it was Cooper's general employer on the date of injury.

The second factor requires that the work that Cooper was doing when he was injured be essentially the work of Labor Force. When, as here, the general employer is in business to lend employees, the work a lent employee performs for the special employer also is essentially the work of the general employer. Thus, this factor is satisfied in every such case.

The third factor requires the general employer to have the right to control the details of the work. An employer retains sufficient control if it has the right to direct when and where the work is performed, the persons for whom the work is performed, and the type and amount of work. *See Carnes,* 73 Ariz. at 268–69, 240 P.2d at 539. A temporary services employer typically will retain this right of control; it assigns a worker to a client employer in response to the latter's job order for a worker to perform a specified job for a fixed duration.

In the current case, in contrast, Labor Force did not assign Cooper to Tradewinds. To the contrary, Cooper had an ongoing working relationship with Tradewinds, which assigned him to various temporary services employers. Tradewinds alone determined if and when Cooper worked for it. Although Labor Force asserted that it retained control over the type of work that Cooper performed, the ALJ rejected this assertion and accepted the testimony that Tradewinds alone determined whether Cooper did assembly, cooler maintenance or any other job while working for Tradewinds.

Tradewinds contends that Labor Force's safety policy established that Labor Force had a right to control Cooper while he was working for Tradewinds. To the contrary, the absence of evidence that Labor Force even mentioned its policy to Cooper or to Tradewinds supports the contrary inference that Labor Force had no right to control the workers whom Tradewinds assigned to Labor Force.

Labor Force, in short, acted only as a payroll service for Tradewinds. This limited function does not satisfy the requirement of having the right to control the details of Cooper's work for Tradewinds. Labor Force therefore is not jointly responsible for Cooper's workers' compensation. Rather, Tradewinds, as special employer, is exclusively responsible.

*B. Jurisdiction of Commission*

The parties dispute whether the Commission has jurisdiction to enforce a contract between employers allocating responsibility for workers' compensation. We agree with Labor Force that the Commission lacked jurisdiction to enforce the alleged agreement

between Labor Force and Tradewinds imposing exclusive responsibility for workers' compensation coverage on Labor Force.

Some jurisdictions have statutes allowing jointly-liable employers to allocate responsibility for workers' compensation by contract. *E.g., Bilotta v. Labor Pool of St. Paul, Inc.,* 321 N.W.2d 888, 890 (Minn.1982); *see also* Larson, § 48.18. The Arizona Workers' Compensation Act does not include such a provision. *See* A.R.S. §§ 23–901 to –1091. *But cf.* A.R.S. § 23–614(E)–(G) (defining temporary services employer as employer of worker performing services for client employer for purposes of unemployment benefits).

Oklahoma has achieved the same practical result by case law. *See Ishmael v. Henderson* 286 P.2d 265 (Okla.1955). Its supreme court concluded that, as between a jointly-liable labor contractor and client employer, the labor contractor is primarily liable. *Id.* at 267–69. The court's rationale, however, did not require industrial commission jurisdiction to enforce a contract between the employers. It instead relied on the contract to support a policy determination to impose primary responsibility on the general employer, which agreed to assume responsibility, paid a premium to its compensation carrier for this coverage and charged the special employer, which did not pay a premium to its compensation carrier for this cost. *Id.*

In this case, however, the special employer, Tradewinds, is exclusively responsible for workers' compensation. The Oklahoma court's analysis therefore does not apply. The only rationale for allocating responsibility from Tradewinds to Labor Force is contractual. Thus, the question remains whether, absent statutory authority, the Arizona Industrial Commission has jurisdiction to enforce a contract allocating responsibility between employers.

In this context, one commentator wrote:

[W]hen the rights of the employee in a pending claim are not at stake, many commissions disavow jurisdiction and send the parties to the courts for relief. This may occur when the question is purely one between two insurers, one of whom alleges that he has been made to pay an undue share of an award to a claimant, the award itself not being under attack. Or it may occur when the insured and insurer have some dispute entirely between themselves about the validity or coverage of the policy or the sharing of the admitted liability. [Footnotes omitted.]

Larson, § 92.42. The resolution in *Ocean Accident and Guarantee Corp., Ltd. v. United States Fidelity and Guaranty Co.,* 63 Ariz. 352, 162 P.2d 609 (1945), is in accord with this approach. The court held that the Commission was the proper tribunal to find as fact that the principals of both the plaintiff and the defendant insurance carriers were employers of the worker. *Id.* at 362, 162 P.2d at 614. It was for separate civil litigation to settle that the plaintiff, having paid all of the award, was entitled to contribution from the defendant. *Id.* at 363, 162 P.2d at 614.

One case specifically addresses whether, absent statutory authority, an industrial commission has jurisdiction to enforce a contract allocating responsibility from an exclusively responsible special employer to a general employer. *See Virginia Polytechnic Institute v. Frye,* 6 Va.App. 589, 371 S.E.2d 34 (1988). The court concluded that the Virginia commission lacked jurisdiction and that the special employer's remedy was a civil action to enforce its agreement with the general employer. *Id.* at 37–38. It explained that the disputes between the employers

are tangential in the sense that both employers concede the compensability of the claim. Their dispute concerns which of them is ultimately liable under their contract, not which is liable under the Act. Thus, construction of the contract in this case is not within the jurisdiction of the Industrial Commission.

*Id.* at 38.[3]

■ We are persuaded by this analysis. The Arizona Industrial Commission's

---

**3.** *See Hartford Fire Ins. Co. v. Tucker,* 3 Va.App. 116, 348 S.E.2d 416, 418 (1986) ("[The Industri-

al Commission's] jurisdiction does not extend to the litigation and resolution of issues between

jurisdiction extends to determining questions arising under the Arizona Workers' Compensation Act. *Hixon v. State Compensation Fund,* 115 Ariz. 392, 393, 565 P.2d 898, 899 (App.1977). "Article 18, section 8, Arizona Constitution and chapter 56, A.C.A.1939 [A.R.S. 23–101 *et seq.*] from whence the commission derives its powers limits the commission to act within its employer-employee relationship only and it cannot go beyond that, except as specifically provided...." *Pressley v. Industrial Comm'n,* 73 Ariz. 22, 31, 236 P.2d 1011, 1017 (1951). It lacks the authority to decide "questions of law that are unnecessary to determine the matters before it...." *Id.* Such a question would be one resolving the contractual relationship between two employers independent of the compensability of the employee.

While Tradewinds concedes that the Arizona act does not expressly authorize the

Commission to enforce a contract between employers, it argues that two statutes implicitly confer this authority. We disagree. Subsection 23–1061(K)[4] is a procedural device protecting claimants who are entitled to compensation by permitting a conditional allocation of responsibility. It is not a substantive rule for deciding employer or carrier responsibility. Section 23–963[5] requires workers' compensation insurance to cover an insured employer's entire liability. Under it, Tradewinds' carrier is required to cover Cooper although Tradewinds did not pay a premium for this coverage. *See e.g., West Chandler Farms Co. v. Industrial Comm'n,* 64 Ariz. 383, 389–90, 173 P.2d 84, 88–89 (1946). This statute does not authorize the Commission to allocate responsibility to another employer simply because the employer privately agreed to assume responsibility.

> When there is a dispute as to which employer, or insurance carrier, is liable for the payment of a compensable claim, the commission may, by order, designate the employer or insurance carrier which shall pay the claim. Payment shall begin within fourteen days after the employer or insurance carrier has been ordered by the commission to commence payment. When a final determination has been made as to which employer or insurance carrier is actually liable, the commission shall direct any necessary monetary adjustment or reimbursement between the parties or carriers involved.

5. This section states, in relevant part:

> Every policy of insurance covering the liability of the employer for workers' compensation, whether issued by the state compensation fund or by another, shall cover the entire liability of the employer to his employees covered by the policy or contract, and be deemed to contain the following provisions:
> 1. That as between the employee and the insurance carrier the notice to or knowledge of the occurrence of the injury on the part of the employer shall be deemed notice or knowledge of the insurance carrier.
> 2. That jurisdiction of the employer shall be jurisdiction of the insurance carrier.
> 3. That the insurance carrier shall be bound by and subject to the orders, findings, decisions and awards rendered against the employer for payment of compensation.
> 4. That the insolvency or bankruptcy of the employer and his discharge therein shall not relieve the insurance carrier from payment of compensation for injuries or death sustained by an employee during the life of the policy or contract.

two insurance carriers which do not affect an award of the Commission. Generally, the Commission's jurisdiction is limited to those issues which are directly or necessarily related to the right of an employee to compensation for a work-related injury. [Citations omitted.]"). *See also Medley v. Salvation Army Rapid City Corps,* 267 N.W.2d 201, 203 (S.D.1978) (court proper arena to resolve dispute between insurers, not workers' compensation agency); *United States Fidelity and Guaranty Co. v. Town of West Warwick,* 119 R.I. 458, 379 A.2d 924, 925 (1977) (no Workmen's Compensation Commission jurisdiction for resolution of contractual dispute between insurer and insured regarding reimbursement provisions of workmen's compensation insurance contract); *Roberts' Fish Farm v. Spencer,* 153 So.2d 718, 720–21 (Fla.1963) (Industrial Commission had jurisdiction to determine who was claimant's employer but not to pierce corporate veil; such determination for court of law or equity.); *Shada v. Whitney,* 172 Neb. 220, 109 N.W.2d 167, 169 (1961) (question of contract interpretation outside jurisdiction created by Workmen's Compensation Act); *American States Insurance Co. v. Hanover Insurance Co.,* 14 Kan.App.2d 492, 794 P.2d 662, 666 (1990) ("Unless specifically allowed by statute, insurance companies may not litigate in the workers compensation division their respective liability for an award if the employee's interests are not at issue."); *Lane Construction Corp. v. Winona Construction Co., Inc.,* 373 N.Y.S.2d 882, 886 (1975) (Workmen's Compensation Board "had no jurisdiction to determine the legal effect of the indemnity contract between" employers, although it had authority to decide whether the injured worker was a general employee of the subcontractor.).

4. This subsection states:

**556**

### C. Conclusion

For these reasons, we conclude that Tradewinds is exclusively responsible for Cooper's workers' compensation coverage, and that the Commission lacked jurisdiction to enforce an alleged agreement between Tradewinds and Labor Force imposing exclusive responsibility for workers' compensation on Labor Force. We accordingly set aside the award and decision upon review enforcing this agreement without deciding whether an enforceable agreement existed.

GARBARINO, P.J., and FIDEL, J., concur.

---

* Corcoran, J., of the Supreme Court, did not participate in the determination of this matter.