67 P.3d 726

Charles N. INMON and Diana L. Inmon, husband and wife, and Mark S. Cummings, an unmarried man, Plaintiffs–Appellants,

v.

CRANE RENTAL SERVICES, INC., an Arizona corporation; Eddie De La Torre and Jane Doe De La Torre, husband and wife, Defendants–Appellees.

Charles N. Inmon and Mark Cummings, Plaintiffs–Appellants,

v.

Crane Rental Services, Inc., an Arizona corporation; Eddie De La Torre and Jane Doe De La Torre, husband and wife, Defendants–Appellees.

Nos. 1 CA–CV 02–0261, 1 CA–CV 02–0597.

Court of Appeals of Arizona,
Division 1, Department E.

May 6, 2003.

Jackson, White, Gardner, Weech & Walker, P.C. By Wm. J. Monahan, Bobbie J. Rasmusson, Kelly G. Black, Mesa, Attorneys for Plaintiffs–Appellants.

Koeller, Nebeker, Carlson & Haluck LLP By Wade Causey, D. John Djordjevich, Phoenix, Attorneys for Defendants–Appellees.

## OPINION

SNOW, Judge.

¶ 1 Appellants Charles N. Inmon, Diana L. Inmon, and Mark S. Cummings (collectively "Plaintiffs") appeal from the Maricopa County Superior Court's summary judgment dismissing their claims against Eddie De La Torre and Crane Rental Services, Inc. ("CRSI"). We affirm in part, reverse in part, and remand.

## FACTS AND PROCEDURAL HISTORY

¶ 2 Charles Inmon and Mark Cummings were iron workers employed by DeRusha Steel who were severely injured on the job

when a crane owned by CRSI and operated by Eddie De La Torre, a CRSI employee, tipped over under load. DeRusha had contracted with CRSI for CRSI to provide a crane and an operator to lift roof joists to the top of a supermarket DeRusha was building.

¶ 3 Plaintiffs sued De La Torre and CRSI (together "Defendants"), contending that the accident had been caused by De La Torre's negligence and that CRSI was vicariously liable for that negligence.[1] Plaintiffs also contended that CRSI was independently negligent in its training and supervision of De La Torre.

¶ 4 Defendants filed a motion for summary judgment, alleging that CRSI was not independently negligent and that both CRSI and De La Torre were entitled to immunity from Plaintiffs' suit under Arizona Revised Statutes ("A.R.S.") section 23–1022(A), part of Arizona's Workers' Compensation Act ("the Act"). The superior court initially denied Defendants' motion. However, following additional discovery, the court granted the renewed motion.

¶ 5 In its summary judgment, the superior court determined that Plaintiffs' objections to granting statutory immunity to Defendants in this context were without merit and that the "actions of the parties, their relationship, and the conduct of the work site is not in dispute." It characterized as dispositive the question whether trained or skilled workers could be "loaned servants." Finding, pursuant to our opinion in *Ruelas v. Staff Builders Personnel Services, Inc.*, 199 Ariz. 344, 18 P.3d 138 (App.2001), that skilled workers could be loaned servants, the superior court entered summary judgment in Defendants' favor. We disagree that summary judgment is appropriate. Accordingly, we reverse and remand.

1. For purposes of the legal issues presented in this appeal, all parties concede De La Torre's negligence. We indulge the same assumption, noting that no such determination has been made.

2. In analysis under either doctrine, the lending employer is referred to as the employee's "general employer." The borrowing entity is referred to as the "special employer." However, the use

## ANALYSIS

¶ 6 In their motion, and on appeal, Defendants have argued, as precedent, authority that pertains both to the "lent employee" doctrine in the workers' compensation context, and a related doctrine sometimes identified by the same name in the vicarious liability context.[2] However, neither Defendants, nor the trial court in its summary judgment, sufficiently distinguish these two related concepts. Our own opinions have not always clearly distinguished them. To be sure, both apply in instances when an employer has loaned a temporary worker to another employer. However, there are important differences between the doctrines illustrated, in part, by the facts of this case. Because the superior court did not specify the legal principle or principles upon which it granted Defendants' motion, we address both doctrines.

### A. The Workers' Compensation "Lent Employee" Doctrine Cannot Be Used To Interpret The Term "Co-employee" Under A.R.S. § 23–1022(A).

¶ 7 The Act prevents employees who are provided with coverage under the Act from suing their employer or co-employees for accidents arising from their employment. A.R.S. § 23–1022(A) ("The right to recover compensation pursuant to this chapter for injuries sustained by an employee ... is the exclusive remedy against the employer or any co-employee acting in the scope of his employment."). At the same time, the Act permits an employee who is injured in the workplace "by another not in the same employ" to pursue his common law remedy against the person or persons who injured him. A.R.S. § 23–1023(A) ("If an employee entitled to compensation under this chapter is injured or killed by the neg-

of this latter term sometimes denotes the court's conclusion that the doctrine in question is applicable, imposing additional liabilities on the "special employer." For purposes of clarity, we refer to the doctrine in the workers' compensation context as the "lent employee" doctrine. We refer to the doctrine in the vicarious liability context as the "loaned servant" doctrine.

ligence or wrong of another not in the same employ, such injured employee … may pursue his remedy against such other person."). Defendants assert that both CRSI and De La Torre are immune from Plaintiffs' suit because, pursuant to the lent employee doctrine, DeRusha became De La Torre's special employer for purposes of obtaining immunity pursuant to A.R.S. § 23–1022(A).

¶ 8 The lent employee doctrine, however, only applies to provide the lent employee (De La Torre) with workers' compensation coverage from the putative special employer (DeRusha). *Labor Force v. Indus. Comm'n*, 184 Ariz. 547, 553–54 911 P.2d 553, 559–60 (App.1995). Once the special employer is obligated to provide workers' compensation coverage to the lent employee under the doctrine, the doctrine also extends immunity to the special employer from suit brought by the lent employee. *Araiza v. U.S. West Bus. Res., Inc.*, 183 Ariz. 448, 453, 904 P.2d 1272, 1277 (App.1995). In this case, however, De La Torre neither seeks coverage from, nor brings a claim against, DeRusha. Thus, the lent employee doctrine does not apply.

¶ 9 Defendants argue for an extension of the doctrine, noting that if, pursuant to the doctrine, DeRusha becomes De La Torre's "special employer," then De La Torre must also become the "co-employee" of Plaintiffs for purposes of granting De La Torre statutory immunity from Plaintiffs' suit as set forth in A.R.S. § 23–1022(A). Building on this speculative premise, Defendants argue that if Plaintiffs cannot bring suit against De La Torre because De La Torre is their co-employee, CRSI cannot be held vicariously liable for De La Torre's negligence.

¶ 10 However, Defendants' argument fails for several reasons. First, Defendants misunderstand the scope and purpose of the lent employee doctrine. The lent employee doctrine's basic purpose is to protect injured workers by expanding the application of workers' compensation coverage. The doctrine is used to determine when a business or employer that borrows a worker from another becomes liable to provide workers' compensation coverage to that worker. *Labor Force*, 184 Ariz. at 554, 911 P.2d at

560; 3 A. Larson, *Workers' Compensation Law* § 67.1 (2002). Our supreme court has laid out the "factors to be considered" in determining when the temporary or "special employer" is obliged to provide worker's compensation benefits, which include:

> (a) the employee has made a contract of hire, express or implied, with the special employer;
>
> (b) the work being done is essentially that of the special employer; and
>
> (c) the special employer has the right to control the details of the work.

*Word v. Motorola, Inc.*, 135 Ariz. 517, 520, 662 P.2d 1024, 1027 (1983) (quoting 1C A. Larson, *Workmen's Compensation Law*, § 48.00 (1982)).

¶ 11 Once an employer becomes liable to provide workers' compensation coverage to the employee, the special employer is deemed an "employer" pursuant to A.R.S. § 23–1022(A). The special employer then receives the benefits of the exclusive remedy statute and is immune from suit by the employee. *Word*, 135 Ariz. at 520, 662 P.2d at 1027 ("[L]ike other employers liable for workmen's compensation, [the special employer] may be entitled to the benefit of the statutory immunity [from lawsuits] given complying employers."); *Avila v. Northrup King Co.*, 179 Ariz. 497, 505–06, 880 P.2d 717, 725–26 (App.1994) (grower, who was deemed employer pursuant to lent employee doctrine, also deemed immune from suit brought by temporary agricultural worker); *Lindsey v. Bucyrus–Erie*, 161 Ariz. 457, 458, 778 P.2d 1353, 1354 (App.1989) (temporary employer that was required to provide workers' compensation coverage deemed immune from suit brought by employee it would have been obliged to cover); *Nation v. Weiner*, 145 Ariz. 414, 419–20, 701 P.2d 1222, 1227–28 (App.1985) (hospital, deemed an employer, is immune from suit by nurse).

¶ 12 Defendants do not argue that pursuant to the "lent employee doctrine" either CRSI or De La Torre would be obliged to provide Plaintiffs with workers' compensation coverage. They merely argue that they should receive a windfall by being immune from Plaintiffs' suit without having a corre-

sponding obligation to provide Plaintiffs with coverage. This is contrary to the purpose behind both the lent employee doctrine and the Workers' Compensation Act. *See also Brumbaugh v. Pet Inc.*, 129 Ariz. 12, 13, 628 P.2d 49, 50 (App.1981) (agent's immunity does not prevent vicarious liability for the agent's acts from attaching to the principal).

¶ 13 Further, the first element of the "lent employee" test is not satisfied unless the party losing its right to bring suit at least impliedly consented to the control over him by the employer who receives the immunity. As the Arizona Supreme Court noted, if implied consent was not a requirement of the lent employee doctrine, it would permit "the two employers themselves ... by their private arrangements to affect the common law rights of the employee without his knowledge and consent." *Young v. Envtl. Air Prods., Inc.*, 136 Ariz. 158, 163, 665 P.2d 40, 45 (1983) (citation omitted).[3] That is precisely the result the statutory interpretation urged by Defendants would cause here. It would deprive Plaintiffs of their right to bring suit against Defendants without any evidence that Defendants had any control over them or that Plaintiffs consented to such control or the loss of their common law remedies against Defendants. Defendants never consented to work for CRSI and De La Torre has given up nothing. Thus, the lent employee doctrine is not applicable.

¶ 14 As well, the Workers' Compensation Act cannot be broadly interpreted to deprive Plaintiffs of their common law remedies. We have repeatedly held in interpreting the Act that "the legislative objectives are furthered if the statute is liberally interpreted when imposing liability for payment of compensation benefits, and strictly interpreted when loss of the worker's common law rights is the object for which the statute is invoked." *Dugan v. Am. Express Travel Related Serv. Co.*, 185 Ariz. 93, 99, 912 P.2d 1322, 1328 (App.1995) (quoting *Young*, 136 Ariz. at 163, 665 P.2d at 45 (internal citations omitted)); see also *Nation*, 145 Ariz. at 420, 701 P.2d at 1228. Applying this required standard in interpreting the Act prevents us from adopting an interpretation that would grant immunity from suit under the Act without a corresponding obligation upon the immunized party.

¶ 15 While we need not decide whether in fact De La Torre met the requirements to qualify as a lent employee here,[4] the Act explicitly preserves for employees the right to bring suit against others "not in the same employ" who cause them injury. A.R.S. § 23–1023(A). Even assuming DeRusha is deemed to be De La Torre's special employer for certain purposes, Plaintiffs here are not in the "same employ" with him. Assuming that De La Torre was a lent employee, De La Torre would have a general employer (CRSI) and a special employer (DeRusha). Plaintiffs would not. Their only employer is DeRusha. Thus, for purposes of interpreting A.R.S. § 23–1023(A) consistently with A.R.S. § 23–1022(A), De La Torre is not "in the same employ" as Plaintiffs here, and accordingly Plaintiffs retain their common law remedies against him.[5]

---

**3.** The requirement of consent represents a significant difference between the "lent employee" doctrine and the "loaned servant" doctrine. Before a worker can be a "lent employee" the worker must, at least impliedly, consent to losing his right to bring suit. No such requirement exists in an analysis of the "loaned servant" doctrine, in part because a worker's right to bring suit is rarely at issue in such cases. *See* 3 A. Larson, *Workers' Compensation Law* § 67.02[1] (2002).

**4.** While recognizing that a loaned employee generally becomes a lent employee to the special employer, the cases cited by Defendants suggest that an operator of special equipment leased to the temporary employer is not a lent employee for workers' compensation purposes. *Avila*, 179 Ariz. at 504, 880 P.2d at 724 ("[I]n the non-labor

contractor cases, where an employer merely loans an employee and does not provide special equipment, the majority rule is that the loaned employee becomes the employee of the special employer.").

**5.** In *Marsh v. Tilley Steel Co.*, 26 Cal.3d 486, 162 Cal.Rptr. 320, 606 P.2d 355, 360 (1980), the California Supreme Court assumed that a "lent employee" might be considered a co-employee for purposes of receiving immunity under its workers' compensation act. Even then, however, *Marsh* stands for the proposition that the regular employees of the special employer could bring suit against the general employer of the lent employee for the lent employee's negligence under vicarious liability principles. *Id.* at 360–61.

¶ 16 Finally, the question whether CRSI should be vicariously liable for the conduct of De La Torre is a question that is more appropriately analyzed under the separate "loaned servant" inquiry in the vicarious liability context. The loaned servant inquiry exists for just such purposes.

¶ 17 It would be contrary to both the workers' compensation "lent employee" doctrine and the Act itself to use the doctrine to extend the scope of the immunity contained in A.R.S. § 23–1022(A) to such "co-employees." Thus, the superior court erred when it dismissed Plaintiffs' claims against De La Torre. To the extent that the superior court also relied on Defendants' proposed interpretation of A.R.S. § 23–1022(A) in granting summary judgment for CRSI, it was also in error.

### B. Summary Judgment Was Also Inappropriate Under A Loaned Servant Analysis.

¶ 18 The superior court might have based its judgment on a determination that CRSI could not be held vicariously liable for De La Torre's negligence because it did not have sufficient right of control over him. Unlike the "lent employee" doctrine, there is only one factor for the court to consider in determining whether CRSI is vicariously liable for De La Torre's negligence: "[I]f a general employer does not have actual control over or the right to control the performance of a lent employee's work, the general employer cannot be held vicariously liable for the acts of the lent employee." *McDaniel v. Troy Design Serv. Co.,* 186 Ariz. 552, 555, 925 P.2d 693, 696 (App.1996).

¶ 19 However, to avoid vicarious liability for an employee's acts, a general employer must show that the special employer had the exclusive right to control the employee's specific job functions. *Id.* at 555, 925 P.2d at 696 (once special employer had exclusive right to control employee in the performance of his duties, general employer was no longer liable for employee's negligence). By contrast, to qualify for workers' compensation immunity under the lent employee doctrine, a "special employer's right to control the employee's work need not be

exclusive, merely primary." *Avila,* 179 Ariz. at 502, 880 P.2d at 722 (quoting *Carnes v. Indus. Comm'n,* 73 Ariz. 264, 270, 240 P.2d 536, 540 (1952)).

¶ 20 Furthermore, when a loaned servant is subject to some control from both his general employer and the special employer in performing his specific job functions, both are vicariously liable for his torts. *McDaniel,* 186 Ariz. at 556, 925 P.2d at 697 ("a servant can have two masters and . . . each of them may be vicariously liable for his actions"); *see also Ruelas,* 199 Ariz. at 348, ¶ 13, 18 P.3d at 142. When all of the aspects of performing the "specific injury-causing activity" are under the control of the temporary employer, the general employer's retained control over the administrative aspects of employment only is not enough to impose vicarious liability on the general employer. *Ruelas,* 199 Ariz. at 347, ¶¶ 8–10, 18 P.3d at 141 (authority to train, evaluate performance and discipline nurses did not mean general employer had authority to control specific duties of nurses); *McDaniel,* 186 Ariz. at 556, 925 P.2d at 697 (general employer's retention of the right to hire and fire employee and its obligation to pay and provide benefits did not give general employer any right to control employee in his specific job functions).

¶ 21 In reviewing the superior court's summary judgment in the present context, however, the question is whether reasonable people could disagree with the trial court's conclusion that DeRusha "exclusively controlled the particular service that [De La Torre] performed" on the job site. *McDaniel,* 186 Ariz. at 556, 925 P.2d at 697. If so, then the summary judgment is improper. In this case there are facts that could lead reasonable people to believe that CRSI retained control of some aspects of the crane's operation.

¶ 22 CRSI is in the business of renting cranes and operators to others. DeRusha temporarily rented both the crane and De La Torre's services as the crane's operator to perform limited and specific functions on DeRusha's job site. As the Restatement (Second) of Agency points out, a general employ-

er who leases machinery and an operator to run it is deemed to maintain some right of control over the operation of the machinery even when the machinery is also subject to the control of the temporary employer.

A continuance of the general employment is also indicated in the operation of a machine where the general employer rents the machine and a servant to operate it, particularly if the instrumentality is of considerable value. Normally, the general employer expects the employee to protect his interests in the use of the instrumentality, and these may be opposed to the interests of the temporary employer. *If the servant is expected only to give results called for by the temporary employer and to use the instrumentality as the servant would expect his general employer would desire, the original service continues.* Upon this question, the fact that the general employer is in the business of renting machines and men is relevant, since in such case there is more likely to be an intent to retain control over the instrumentality.

Restatement (Second) of Agency § 227(c) (1958) (emphasis added); *Larsen v. Ariz. Brewing Co.*, 84 Ariz. 191, 199, 325 P.2d 829, 835 (1958) (citing predecessor of this rule as authority for holding that contractor who leased truck and driver from lessor was not vicariously liable for accident caused by driver at job site); *see also Lee Moor Contracting Co. v. Blanton*, 49 Ariz. 130, 136, 65 P.2d 35, 37 (1937) (quoting *Charles v. Barrett*, 233 N.Y. 127, 135 N.E. 199, 200 (1922) ("as long as the employee is furthering the business of his general employer by the service rendered to another, there will be no inference of a new relation unless command has been surrendered, and no inference of its surrender from the mere fact of its division.")).

¶ 23 Defendants acknowledge that DeRusha did not control the exact levers or buttons being pushed in the crane. They also acknowledge that De La Torre "could have refused to do [DeRusha's] work altogether." But Defendants emphasize the evidence they provided the trial court that Kevin DeRusha and his on-site manager were experienced at operating cranes, DeRusha managed the job site, DeRusha employees assembled the joists to be lifted, DeRusha should have communicated to the crane operator the weight of the load, if DeRusha didn't like the way De La Torre operated the crane it could have told him to leave the job site with his crane, and DeRusha employees gave hand signal directions to De La Torre when moving the loads.

¶ 24 Nevertheless, even if, despite Plaintiffs' evidentiary recitation to the contrary,[6] we were to view all of Defendants' evidence as uncontested, it only suggests that DeRusha had considerable control over De La Torre's operation of the crane. It does not establish either that DeRusha had exclusive control over the crane's operation or that CRSI had completely surrendered the right to control the crane's operation to DeRusha.

¶ 25 At his deposition, Kevin DeRusha testified that he had previously rented cranes and operators from CRSI and that he had previously worked with De La Torre specifically as a CRSI operator. In discussing his previous experience with De La Torre and CRSI, he indicated an understanding that De La Torre acted to protect the crane that De La Torre operated.

Q: Okay. This other situation you have—you were talking about, you told Eddie to shut down and stop what he was doing, hold it 'til you could go down, take care of the situation, is that right?

A: Correct.

Q: Okay. When you told Eddie, as any crane operator, you would expect him to do what you told them, is that correct?

A: That's a hundred percent his call. It's his crane, and if he starts getting light and

---

**6.** Plaintiffs contest Defendants' assertion of control, citing evidence that CRSI independently evaluated the size of crane needed on the job and sent out a smaller crane than DeRusha ordered, the crane operator independently positioned the crane as he saw fit prior to the accident, the crane operator independently attached a boom extension to the crane to assist him in its operation, the crane operator could have refused to follow DeRusha's instructions and left the job site, and that the crane operator had the unique responsibility of calculating the safety of the lift including the weight of the load.

the outriggers start to come up, he has a responsibility to stop the operation and say, this ain't going to work. That's a hundred percent operator responsibility.

¶ 26 We review *de novo* the trial court's summary judgment and view the evidence in the light most favorable to the non-prevailing parties. *L. Harvey Concrete, Inc. v. Agro Constr. & Supply Co.*, 189 Ariz. 178, 180, 939 P.2d 811, 813 (App.1997). In this case, Plaintiffs have set forth facts showing that Defendants rented to DeRusha both machinery and an operator of that machinery. As the Restatement demonstrates, reasonable people could conclude based on these facts that CRSI maintained some right of control over the crane's operation and that it was the understanding of the parties that it would do so. *See* Restatement (Second) of Agency § 227(c). These facts are material and sufficient to defeat a motion for summary judgment.[7] Accordingly, the superior court erred when it entered judgment in Defendants' favor on Plaintiffs' derivative liability claims against CRSI.

**C. Summary Judgment Was Appropriately Entered On The Negligent Training Claim.**

¶ 27 Prior to his deposition, Plaintiffs' expert proffered an affidavit and reports to the effect that De La Torre's training was inadequate. At his deposition, however, the expert acknowledged that he could not say that De La Torre was improperly trained, but only that his actions did not demonstrate proper training. In granting Defendants' motion on Plaintiffs' negligent training claim, the superior court observed that "Plaintiffs' expert does not go so far as to indicate what training was omitted ... [f]ailure to demonstrate competence is not automatically a showing of inadequate training." We agree.

¶ 28 On appeal, Plaintiffs argue that De La Torre's negligent conduct is sufficient to give rise to an inference of negligent training.

However, in the absence of facts specifying in what way De La Torre's training or lack thereof was negligent, even if we make such an inference, there is no evidence showing that such negligent training was the proximate cause of Plaintiffs' injuries. *See Ward v. Mount Calvary Lutheran Church,* 178 Ariz. 350, 357, 873 P.2d 688, 695 (App.1994) (summary judgment was appropriate when, even inferring negligent supervision in absence of facts establishing such negligence, causation evidence was wholly absent). We thus affirm the superior court's summary judgment on Plaintiffs' claim for negligent training.

¶ 29 Because we reverse the summary judgment and remand for further proceedings, we vacate the superior court's award of costs to Defendants as prevailing parties. In addition, Plaintiffs request an award of costs on appeal. As the prevailing party, Plaintiffs are entitled to such costs. *Borrow v. El Dorado Lodge, Inc.,* 75 Ariz. 218, 220, 254 P.2d 1027, 1029 (1953); *Country Mut. Ins. Co. v. Fonk,* 198 Ariz. 167, 172, ¶ 25, 7 P.3d 973, 978 (App.2000). We, therefore, award them upon Plaintiffs' compliance with Arizona Rules of Civil Appellate Procedure 21.

**CONCLUSION**

¶ 30 For the foregoing reasons, we affirm the trial court's order granting Defendants summary judgment on Plaintiffs' negligent training claim against CRSI, but we reverse the trial court's judgment dismissing Plaintiffs' negligence claims against De La Torre and dismissing the vicarious liability claims against CRSI. We remand to the trial court for further proceedings consistent with this opinion.

CONCURRING: EDWARD C. VOSS, Judge, and JOHN C. GEMMILL, Judge.

---

7. Both *Ruelas* and *McDaniel* only concerned a general employer's vicarious liability for the conduct of a leased employee. Here, however, CRSI leased equipment and an operator of the equipment to DeRusha. Such a leasing arrangement

gives rise to the presumption that CRSI retained some control in De La Torre's operation of the crane. CRSI retained some control in De La Torre's operation of the crane.