904 P.2d 1272

**Cesar ARAIZA, Plaintiff–Appellant,**

**v.**

**U.S. WEST BUSINESS RESOURCES, INC., a Colorado corporation, Defendant–Appellee.**

No. 1 CA–CV 93–0393.

Court of Appeals of Arizona, Division 1, Department D.

May 30, 1995.

Review and Cross–Petition for Review Denied Oct. 24, 1995.

---

James P. Cunningham, P.C. by James P. Cunningham, Phoenix, for appellant.

Ridenour, Swenson, Cleere & Evans, P.C. by Michael J. Frazelle and Robert R. Byrne, Phoenix, for appellee.

## OPINION

THOMPSON, Judge.

An employee of a labor broker was injured while working for a special employer. He argues that because the contract between the employers provides that employees furnished to the special employer are solely the employees of the labor broker, he should be able to sue the special employer in tort for his injuries. We disagree and hold that, the contract notwithstanding, because the true nature of the relationship of the parties was that of employer and employee, the special employer enjoys the immunity from tort liability afforded to employers under Arizona law. We also hold that the employee is not entitled to bring a third-party claim under the contract and that certain provisions of the workers' compensation act as applied to him are not unconstitutional.

## FACTS AND PROCEDURAL HISTORY

Appellee U.S. West Business Resources, Inc. (U.S. West) and Manpower Temporary Services, Inc. (Manpower) operated under a contract by which Manpower furnished employees to work at U.S. West premises. Appellant Cesar Araiza (Araiza) learned about employment with Manpower from his cousin, who worked for U.S. West. The cousin told Araiza that he could not work for U.S. West directly but instead had to work for Manpower, and Manpower would send him to a job at U.S. West.

Araiza applied for a job at Manpower, and the following day, October 8, 1988, he was sent to work at the U.S. West reclamation plant. He was given a Manpower time card each week and was paid by Manpower. Araiza knew that he was an employee of Manpower rather than U.S. West. Rudy Parra (Parra), a U.S. West employee, supervised Araiza. Araiza asked Parra if he could operate the cable stripping machine because the pay was higher for that job than for what he was doing; Parra told him he could do so after working at U.S. West for one month. When the month passed, Parra assigned Araiza to the cable stripping machine and gave Araiza instructions on how to operate it. Parra supervised Araiza's work. While working for U.S. West, Araiza was required to comply with U.S. West's policies, rules, and directives. U.S. West had the right to refuse, to accept, or to terminate Araiza's assignment from Manpower.

On March 2, 1989, while Araiza was working at the cable stripping machine, it jammed. When Araiza tried to unjam it, his left hand got caught in the machine and was pulled into it. He suffered serious permanent injury to his left hand, wrist, and arm.

U.S. West notified Manpower of Araiza's injury. Araiza applied for and received workers' compensation benefits through Manpower. No claim was filed against, or paid from, U.S. West's workers' compensation coverage.

A workers' compensation notice was posted in the office of the manager of the U.S. West reclamation plant. However, Araiza did not see any workers' compensation notices in the office or anywhere else on the plant premises, and no one ever explained to him his workers' compensation rights.

In February, 1991, Araiza filed an action in tort against the manufacturer and distributor of the machine in which his hand and arm were injured. He alleged negligence, products liability, and breach of warranties. On November 1, 1991, with permission of the trial court, Araiza filed his second amended complaint, in which he added U.S. West as a defendant. He alleged that U.S. West was negligent in making changes or modifications to the cable stripping machine, in failing to properly train Araiza and other employees on the operation of the machine, and in failing to warn of the dangers of the machine.

U.S. West moved to dismiss the complaint against it on the ground that the statute of limitations for bringing an action had expired before Araiza filed his second amended complaint. Araiza responded that under *Ritchie v. Grand Canyon Scenic Rides*, 165 Ariz. 460, 799 P.2d 801 (1990), the complaint against U.S. West was timely because it was filed and served within a year of the filing of the original complaint. The trial court denied the motion to dismiss, based on its reading of *Ritchie*.

U.S. West then filed a motion for summary judgment in which it argued it was immune from suit by Araiza pursuant to Ariz.Rev. Stat.Ann. section ("A.R.S. §") 23–1022(A) because it was an employer of Araiza and carried a policy of workers' compensation insurance to cover its employees. Araiza argued in response that U.S. West contracted away its legal status as an employer of Araiza and that the provisions of A.R.S. § 23–906(B) and (C) are unconstitutional because they deprived Araiza of his right to reject workers' compensation from U.S. West. He also asserted that he was a third-party beneficiary of the contract between U.S. West and Manpower and thus was entitled to have the contract enforced as written so that he could pursue a third-party claim against U.S. West.

The trial court granted the motion for summary judgment, finding that Araiza was an employee of U.S. West and that the actual employment relationship was controlling regardless of the contract terms used between U.S. West and Manpower. The court entered a final judgment under Rule 54(b), Arizona Rules of Civil Procedure. Araiza timely appealed from the judgment in favor of U.S. West.

## DISCUSSION

### A. Was U.S. West an Employer of Araiza?

█ Araiza argues that U.S. West contracted away its legal status as the employer of Araiza and thus is not entitled to workers' compensation act immunity from his tort claims. U.S. West responds that it is clearly a special employer under Arizona case law and that the contract between it and Manpower cannot change the relationship between U.S. West and Araiza from that of special employer/lent employee.

The arrangement between U.S. West and Manpower by which Araiza went to work for U.S. West was governed by a "General Services Agreement for Temporary Help Services" and two amendments thereto. Under the agreement, Manpower is the "Supplier" and U.S. West is the "Customer." The relevant contract provisions are the following:

B19. INDEMNITY

Supplier assumes full responsibility for and shall indemnify and hold Customer harmless from and against any claims, losses, actions, damages, expenses and all other liabilities, including, but not limited to, costs and attorneys fees, arising out of or resulting from:

a) the performance of or failure to perform Services, if any such claim, loss, action, damage, expense, or other liability is attributable to bodily injury or to death of any person, or to damage to or destruction or theft of any property, whether belonging to Customer or another, excepting only injury, death, damage or destruction to the extent caused by the negligence (except to the extent prohibited by local law) of Customer; and

b) assertions under Workers' Compensation or similar acts made by Supplier.

B21. INSURANCE

a) Notwithstanding the provisions of the clause entitled "INDEMNITY," Supplier shall obtain and maintain, during the term of this Agreement, at its own cost and expense, all insurance and/or bonds required by law, including, but not limited to:

(1) Workers' Compensation insurance in the form and amount (including the Broad Form All States endorsement) prescribed by law of the state in which the Services are performed;

    *   .   *     *     *     *     *

c) Customer shall be an additional named insured in such insurance.

B24. INDEPENDENT CONTRACTOR

Customer and Supplier agree that Supplier is engaged as an Independent Contractor and will perform its obligations under this Agreement as an Independent Contractor and not as the agent, employee or servant of Customer. All persons furnished by Supplier to perform the Services hereunder shall be considered solely the employees or agents of Supplier. Supplier shall be responsible for compliance with all laws and rules and regulations involving, but not limited to, employment of labor, hours of labor, working conditions, payment of wages and payment of taxes such as unemployment, social security and other payroll

taxes, in addition to any employment benefits claimed by persons furnished by Supplier.

Before considering the application of the contract terms, we review Arizona law concerning lent employees and special employers. When a labor contractor such as Manpower supplies or "lends" its employee to another employer, the result may be an arrangement in which one employee has two employers. *Lindsey v. Bucyrus–Erie,* 161 Ariz. 457, 458, 778 P.2d 1353, 1354 (App. 1989). The significance of this arrangement is that both employers are liable for workers' compensation and both are immune from tort liability for injuries received by the employee on the job pursuant to A.R.S. § 23–1022(A). *Id.; Avila v. Northrup King Co.,* 179 Ariz. 497, 501, 880 P.2d 717, 721 (App.1994); *Nation v. Weiner,* 145 Ariz. 414, 417 n. 2, 701 P.2d 1222, 1225 n. 2 (App.1985).

In *Word v. Motorola, Inc.,* 135 Ariz. 517, 662 P.2d 1024 (1983), the Arizona Supreme Court adopted the following factors for determining when a lent employee has become the employee of the special employer:

> When a general employer lends an employee to a special employer, the special employer becomes liable for workmen's compensation only if
>
> (a) the employee has made a contract of hire, express or implied, with the special employer;
>
> (b) the work being done is essentially that of the special employer; and
>
> (c) the special employer has the right to control the details of the work.
>
> When all three of the above conditions are satisfied in relation to both employers, both employers are liable for workmen's compensation.

*Id.* at 520, 662 P.2d at 1027, quoting 1C Arthur Larson, *The Law of Workmen's Compensation* § 48.00 (1982). Araiza does not dispute that these factors are all present in his situation. Indeed, typically, a company which obtains workers from a "labor contractor" (whose business is to hire employees and sell their services as temporary help) is a special employer who is immune from civil suits brought by lent employees. *Avila,* 179 Ariz. at 502–03, 880 P.2d at 722–23.

As to the first factor, the required consent to a contract of hire can be implied from the circumstances. *Id.* at 502, 880 P.2d at 722. Such an employment relationship can be implied from the lent employee's acceptance of the assignment to work for the special employer as well as acceptance of the special employer's control, direction, and supervision of the job being performed. *Lindsey,* 161 Ariz. at 459, 778 P.2d at 1355. This acceptance need be exhibited only for a short time, *i.e.,* a few days, to imply consent. *See id.* at 459, 778 P.2d at 1355 (employee of labor contractor who worked for special employer for three days before injury consented to employment with special employer).

A contract of hire between Araiza and U.S. West is implicit in Araiza's acceptance of the assignment from Manpower and direction, control, and supervision by U.S. West. Araiza worked at U.S. West for five months, a time more than adequate to indicate his consent to the assignment. When Araiza went to the work site and U.S. West directed and controlled his work, an employer/employee relationship was established as a matter of law. *See Lindsey,* 161 Ariz. at 459, 778 P.2d at 1355.

As to the second factor, it is undisputed that Araiza was doing the work of U.S. West. Likewise, there is no dispute that U.S. West had the right to control, direct, and supervise the details of the cable stripping work Araiza did for it. Araiza was injured while doing the work U.S. West directed him to do. All three of the factors adopted by the *Word* court have been met.

Araiza argues, however, that even though U.S. West is considered his special employer under the common law, provisions of the contract between Manpower and U.S. West that indicate that Manpower is his sole employer take this relationship out of the common law rule. He contends that because U.S. West contractually gave up its legal status as the employer of employees furnished by Manpower, it is not entitled to claim that it is Araiza's employer for workers' compensation immunity purposes.

As noted above, the lent employee/special employer doctrine, particularly as applied to labor contractors, is well-established in Arizona. Indeed, in *Lindsey,* the labor contractor who lent its employee to the defendant company (determined by Division Two of this court to be a special employer and thus immune from tort liability) was also Manpower. Araiza argues that *Lindsey* can be distinguished because the court did not there consider the effect of any agreement regarding lent employees between Manpower and the special employer.

We conclude that the contract between Manpower and U.S. West does not overcome the true nature of the employment relationship. In considering whether a claimant was an employee or an independent contractor for workers' compensation purposes, this court in *Anton v. Industrial Comm'n,* 141 Ariz. 566, 568, 688 P.2d 192, 194 (App.1984), noted that "[i]t is not the appellation which the parties give to the relationship, but rather the objective nature of the relationship, determined upon an analysis of the totality of the facts and circumstances of each case, which is determinative." (Citation omitted.) Citing the above-quoted language from *Anton,* the supreme court in *Santiago v. Phoenix Newspapers, Inc.,* 164 Ariz. 505, 508, 794 P.2d 138, 141 (1990), rejected the employer's argument that the language of the employment contract determined whether the plaintiff was an employee or independent contractor, concluding that the contract language did not determine the relationship of the parties.

This rule is equally applicable where, as here, the question is whether a plaintiff was in a lent employee/special employer relationship. The fact that the contract provides that Manpower is the sole employer of employees like Araiza may be determinative of other matters in the business relationship, but it does not determine whether, for purposes of the immunity established under § 23–1022(A), U.S. West was Araiza's special employer under Arizona law. That determination is made by considering the objective nature of the relationship.

Looking at the real nature of the relationship to determine workers' compensation coverage cuts both ways. On the one hand,

the special employer is immune from tort liability. On the other hand, the lent employee is able to claim workers' compensation from either of two employers. And while Manpower agreed to indemnify U.S. West for any claims involving personnel supplied under the temporary help agreement, the agreement cannot avail Araiza nor make U.S. West liable for his tort claims, because an indemnity cannot create liability. *See* William L. Prosser, *Law of Torts* § 84 (3d ed. 1964). Because U.S. West was Araiza's special employer, Araiza could have made his workers' compensation claim against U.S. West, and such claim would have been paid. But, also because U.S. West was Araiza's special employer, U.S. West is immune from tort liability to him.

Araiza cites *Lechuga, Inc. v. Montgomery,* 12 Ariz.App. 32, 467 P.2d 256 (1970), and *Superior Companies v. Kaiser Cement Corp.,* 152 Ariz. 575, 733 P.2d 1158 (App.1986), as support for his argument that there is nothing in the workers' compensation act or public policy that prohibits an employer from contractually making itself liable for its employees' injuries. Although this is a correct statement of law, it does not help Araiza for two reasons. First, in those two cases, the employers did not contract to allow their employees to sue them directly. Instead, in *Lechuga,* a lease between the defendant lessor and the plaintiff's employer, the lessee, contained a "hold harmless" clause in defendant's favor such that if the plaintiff employee prevailed against the defendant lessor, his employer would ultimately pay the judgment. Similarly, in *Superior,* the plaintiff's employer agreed to indemnify its landlord from all claims arising from the employer's use of the property; if the plaintiff prevailed the employer would end up paying the judgment obtained by his employee. In neither case did the plaintiff attempt to sue his employer. In both cases, the employers might have had to pay their employees' judgments only because the employers had agreed to indemnify the non-employers. Thus, these cases do not give Araiza a right to sue his employer.

Second, U.S. West did not by contract make itself liable for Araiza's injuries. In fact, by its contract with Manpower, U.S.

West contracted to avoid paying for on-the-job injuries suffered by Manpower-furnished employees. Accordingly, the contract between Manpower and U.S. West does not operate to overcome the conclusion that U.S. West was Araiza's special employer entitled to immunity from tort liability under the workers' compensation act.

### B. Is Araiza Entitled to Maintain a Third–Party Beneficiary Claim?

■ Araiza argues that he was identified as the party to be benefitted under the contract between Manpower and U.S. West. He thus contends that as a third-party beneficiary he is entitled to a determination that U.S. West was not his employer and he therefore may pursue a third-party claim of negligence against U.S. West.

■ For a third party to maintain an action on a contract, the contract must have been entered into for the express benefit of the third party; the party cannot be merely an incidental beneficiary. *Maganas v. Northroup,* 135 Ariz. 573, 575, 663 P.2d 565, 567 (1983). The benefit must be both intentional and direct, and "'it must definitely appear that the parties intend to recognize the third party as the primary party in interest.'" *Norton v. First Fed. Sav.,* 128 Ariz. 176, 178, 624 P.2d 854, 856 (1981), quoting *Irwin v. Murphey,* 81 Ariz. 148, 154, 302 P.2d 534, 538 (1956). The construction of the contract is a question of law for the court. *Maganas,* 135 Ariz. at 575, 663 P.2d at 567.

Araiza cites a copy of his time card, which is ·in the record, and sections B5, B9, B21, and B24 of the contract and Amendment 2 to the contract as indicating that the contract was intended to benefit him.· As to the time card, we see nothing on it that indicates that the contract between Manpower and U.S. West is intended to benefit Araiza. It is simply a validation by U.S. West of the hours worked by Araiza so that he could be paid by Manpower.

Section B5 of the contract specifies the items to be included on a form of order by which U.S. West would notify Manpower of the type of employees it needed. Nothing in that section benefits Araiza. Section B9 de-

scribes the methods by which U.S. West was to pay invoices from Manpower. This provision gives only rights to payment between Manpower and U.S. West; it has nothing to do with payments from Manpower to Araiza. Section B21 involves the types of insurance Manpower was to carry, including workers' compensation coverage. At best, this provision incidentally benefits Araiza in the case of an on-the-job injury. However, even if he were able to bring an action to enforce this provision, the action would be to claim workers' compensation from Manpower. Section B24 provides that all persons furnished for work by Manpower are considered solely the employees of Manpower. It does not appear from this provision ᵥthat the parties to the contract intended to recognize Araiza as the primary party in interest.

Amendment 2 involves the term of the contract and the information that must be included on monthly reports from Manpower to U.S. West. Nothing in the amendment confers a direct benefit on Araiza.

Araiza has cited no provision of the contract that recognizes him or even anyone in his position as a primary party in interest. Therefore, we conclude that Araiza is not entitled to bring a third-party claim against U.S. West.

### C. Are A.R.S. §§ 23–906(A), (B) and (C) Unconstitutional As Applied to Araiza?

■ Araiza argues that A.R.S. §§ 23–906(A), (B) and (C) are unconstitutional as applied to him because he was not given an opportunity to sign a waiver form at the U.S. West facility or advised of a right to do so. He contends that his situation as a temporary employee precluded him from electing to waive workers' compensation from the special employer. According to Araiza, even though he was entitled to workers' compensation benefits from Manpower, he had a right to pursue a tort claim against any third party not in the same employment relation.

A workers' compensation system is authorized by the Arizona Constitution at Article 18, Section 8, which provides in relevant part:

The Legislature shall enact a Workmen's Compensation Law applicable to workmen

engaged in manual or mechanical labor ... by which compensation shall be required to be paid to any such workman, in case of his injury ... by his employer ... provided that it shall be optional with any employee engaged in any such private employment to settle for such compensation, or to retain the right to sue said employer ... such employee, engaged in such private employment, may exercise the option to settle for compensation by failing to reject the provisions of such Workmen's Compensation Law prior to the injury....

As authorized by the Constitution, the legislature enacted A.R.S. § 23–906(C), which provides that employees are conclusively presumed to have elected to take workers' compensation unless notice of election to reject workers' compensation in writing has been served on the employer prior to any injury.

Araiza contends that he was not given the opportunity by U.S. West to reject workers' compensation. However, employers are not required to verbally explain workers' compensation to employees. Instead, employers must post at a conspicuous place on the business premises a notice in English and Spanish in substantially the form shown at A.R.S. § 23–906(D). In the record below, U.S. West attested that it had posted such notice in English and Spanish at a conspicuous place at the reclamation yard where Araiza worked. Forms on which employees could reject workers' compensation were kept in the office at the reclamation yard. Araiza did not dispute these facts, except to say that he did not see the notice. We conclude on these facts that U.S. West complied with A.R.S. § 23–906(D), and that Araiza elected to take workers' compensation coverage only. *See Jeune v. Del E. Webb Const. Co.,* 76 Ariz. 418, 265 P.2d 1076 (1954).

One of the express purposes for the adoption of Article 18, section 8 and the workers' compensation act mandated by it was to curtail litigation between employers and employees. *Ream v. Wendt,* 2 Ariz.App. 497, 501, 410 P.2d 119, 123 (1966). As noted above, it is well-established in Arizona that a special employer who procures workers' compensation coverage is immune from tort liability for injured employees who have not opted out of workers' compensation. Because U.S. West is a special employer with coverage, it enjoys this immunity. Given the purpose of workers' compensation, we believe that neither our Constitution nor our legislature contemplates that, in a special employer situation, the injured employee has a right to recover workers' compensation from one employer and sue the other, or recover workers' compensation from both employers, or sue both employers. There is no reason that a labor broker employee who is injured while working for a special employer should enjoy greater rights under the workers' compensation system than would an injured employee with only one employer. We conclude that the application of the lent employee/special employer law to Araiza is not unconstitutional.

**D. U.S. West's Cross–Issue**

As its cross-issue, U.S. West argues that the trial court erred by not granting its motion for summary judgment asserting that Araiza's claim against it was barred by the statute of limitations. Because we affirm the judgment in favor of U.S. West on the ground determined by the trial court, we need not reach this cross-issue.

The judgment is affirmed.

CONTRERAS, P.J., and VOSS, J., concur.