966 P.2d 1017

**James Kevin WISEMAN and Chong Wiseman, his wife, Plaintiffs–Appellants,**

**v.**

**DYNAIR TECH OF ARIZONA, INC., an Arizona corporation, Defendant–Appellee.**

**No. 1 CA–CV 97–0328.**

Court of Appeals of Arizona, Division 1, Department B.

May 19, 1998.

Review·Denied Nov. 17, 1998.

Treon, Strick, Lucia & Aguirre, P.A. by Michael P. Stark, Arthur G. Newman, Jr. and John Philip Grace, P.C. by John Philip Grace, Phoenix, Attorneys for Plaintiffs–Appellants.

Gust Rosenfeld P.L.C. by James H. Marburger, Phoenix, Attorneys for Defendant–Appellee.

GERBER, Judge.

¶ 1 This case presents the issue of legal standards for a lent employee. James Kevin Wiseman and Chong Wiseman (Wiseman) argue on appeal that DynAir Tech of Arizona, Inc. (DynAir) was not immune from tort liability for Mr. Wiseman's workplace accident and that a question of fact exists concerning his status as a lent employee. We affirm.

## FACTS AND PROCEDURAL HISTORY

¶ 2 On appeal from summary judgment, we view the facts in the light most favorable to the party against whom judgment was entered. *State ex rel. Corbin v. Challenge, Inc.*, 151 Ariz. 20, 24, 725 P.2d 727, 731 (App.1986).

¶ 3 While unemployed in late 1993, Wiseman, a certified Federal Aviation Administration (FAA) airframe and powerplant (A & P) mechanic, heard about an opportunity to work for DynAir, an FAA-certified repair station. To take advantage of this opportunity, he had to be hired by PDS Technical Services (PDS), a labor contractor who provided temporary workers to the aerospace industry. Under a written service agreement between PDS and DynAir, PDS agreed to provide its employees to DynAir. PDS hired Wiseman, signed him to a written contract, and assigned him to DynAir as a temporary employee.

¶ 4 When Wiseman reported to DynAir for work, it instructed him about safety, security, communications, policies regarding working on aircraft, completing of DynAir work forms, using protective equipment, and handling hazardous materials. Although he mostly worked alone, at times he did work with crews composed of both PDS and Dy-

nAir workers. DynAir required that all work comply with FAA repair station authorization.

¶ 5 Wiseman used primarily his own tools, although he sometimes used DynAir's tools and equipment. If a PDS employee did not wish to use his own tools or lacked the tool required for a particular job, then DynAir was responsible for furnishing the needed tools. In addition, DynAir was required to supply all other materials, facilities, space, and equipment needed.

¶ 6 While working at DynAir, Wiseman was injured when he fell from a platform. He sued DynAir on the theory that it caused his injuries by negligently maintaining and inspecting the platform. DynAir moved for summary judgment under the claim that Wiseman's exclusive remedy, as a lent employee, was workers' compensation. The trial court entered judgment in DynAir's favor. Wiseman appealed from the judgment. We have jurisdiction under A.R.S. § 12–2101(B).

## DISCUSSION

¶ 7 Three elements must be proved to establish that a "lent employee" has become the employee of the "special employer":

(a) the employee has made a contract of hire, express or implied, with the special employer;

(b) the work being done is essentially that of the special employer; and

(c) the special employer has the right to control the details of the work.

*Word v. Motorola, Inc.*, 135 Ariz. 517, 520, 662 P.2d 1024, 1027 (1983), *quoting* 1C A. LARSON, WORKMEN'S COMPENSATION LAW, § 48.00 (1982).[1] When all three factors are met, the special employer is liable for workers' compensation and entitled to the benefit of the statutory tort immunity given to complying employers. *Id. See* A.R.S. § 23–1022.

¶ 8 While agreeing that the second and third factors are satisfied, Wiseman argues that a genuine issue of fact exists as to the first element. He asserts that the issue of

1. Retitled Larson's Workers' Compensation Law in 1997.

consent is for the jury because reasonable minds could differ as to whether he expressly or impliedly consented to a contract of hire with DynAir.

¶9 Because Wiseman does not dispute the second and third factors from *Word,* we examine only whether the uncontroverted facts establish the first factor as a matter of law. The employee's consent to a contract of hire may be implied from the circumstances. *Araiza v. U.S. West Business Resources,* 183 Ariz. 448, 452, 904 P.2d 1272, 1276 (App.1995). A contract of hire is implied if the employee accepts the assignment from the general employer to work for the special employer and accepts control, direction, and supervision by the special employer. *Avila v. Northrup King Co.,* 179 Ariz. 497, 502, 880 P.2d 717, 720 (App.1994). Consent can be implied even if the job is only for a short time. *Lindsey v. Bucyrus–Erie,* 161 Ariz. 457, 459, 778 P.2d 1353, 1355 (App. 1989) (three-day duration of employment was sufficient to imply consent).

¶10 The issue of implied consent to a contract of hire frequently arises in cases where the employee works for a labor contractor. A labor contractor hires employees and sells their services as temporary help to other employers. *Araiza,* 183 Ariz. at 452, 904 P.2d at 1276. A special employer obtains workers from a labor contractor and enjoys immunity from civil suits brought by lent employees injured while working for it. The lent employee "need only be aware of and consent to the facts that give rise to the lent employee relationship. He need not be aware of and consent to the legal consequences of such facts." *Avila,* 179 Ariz. at 504, 880 P.2d at 722. Where the facts of employment are undisputed, the existence of an employment relationship is a matter of law.

¶11 Wiseman argues that a jury could infer that he did not consent to employment with DynAir because his contract was with PDS, PDS paid him, only PDS could fire him, and his PDS contract prohibited him taking a job with DynAir during his assignment and for 90 days thereafter. We disagree. This arrangement is typical when a labor contractor assigns an employee to a special employer. *See Avila,* 179 Ariz. at 499, 880 P.2d at 719 (labor contractor employed lent employee and paid his wages; employee impliedly consented to employment with special employer); *Lindsey,* 161 Ariz. at 458–59, 778 P.2d at 1354–55 (employee of Manpower consented to employment with special employer); *Nation v. Weiner,* 145 Ariz. 414, 701 P.2d 1222 (App.1985) (nurse employed by temporary medical personnel agency had implied contract of hire with hospital to which she was assigned.) Wiseman's contract and payment arrangement were no different from those in the usual lent employee situations.

¶12 In *Araiza,* the plaintiff argued that an implied contract of hire did not exist because the contract between Manpower and U.S. West indicated that Manpower was his sole employer. 183 Ariz. at 452, 904 P.2d at 1276. Manpower employed Araiza and assigned him to U.S. West Business Resources. We concluded that the contract did not overcome the true employment relationship because " '[i]t is not the appellation which the parties give to the relationship, but rather the objective nature of the relationship, determined upon an analysis of the totality of the facts and circumstances of each case which is determinative.' " *Id.* at 453, 904 P.2d at 1277, *quoting Anton v. Industrial Comm'n of Arizona,* 141 Ariz. 566, 568, 688 P.2d 192, 194 (App.1984).

¶13 When a labor contractor supplies its employee to another employer, the employee may be deemed to have two employers, both immune from tort liability for injuries the employee receives on the job. *Lindsey,* 161 Ariz. at 458, 778 P.2d at 1354. Contracts between labor contractors and their employees frequently restrict the employee from seeking sole employment with the special employer or declare that the worker is the employee of the labor contractor alone. *Araiza* decided that such a contract provision did not preclude finding that a special employment relationship existed. Wiseman agreed not to take a job with DynAir during and for 90 days after his assignment to DynAir. Here, as in *Araiza,* a contractual provision prohibiting sole em-

ployment with a special employer does not preclude the court from finding that Wiseman impliedly consented to a contract of hire with DynAir.

¶ 14 Ordinarily, "[w]hen the employee arrives at the work site and the employer directs and controls his work, the legal [lent employee/special employer] relationship is established as a matter of law." *Lindsey*, 161 Ariz. at 459, 778 P.2d at 1355. Wiseman does not dispute accepting PDS's assignment to work at DynAir nor does he dispute working there for at least six weeks. At his deposition, he admitted that he saw his employment at PDS as a stepping stone to employment with DynAir.

¶ 15 Wiseman argues that DynAir did not direct or control the method or manner of his work because FAA rules and manufacturers' manuals govern his work. However, DynAir determined whether there was compliance with the FAA requirements, directed his work assignments and required him to document his work on forms. Wiseman admitted receiving a work card and an assignment from a DynAir supervisor at the beginning of each shift and returning the work card to the supervisor when he finished the job. If he completed a task before shift end, he reported to the supervisor for another assignment. DynAir demonstrated that the work cards contained step-by-step work instructions with references to manufacturers' manuals, drawings, and other technical data. Frequently, an inspector had to approve his work after he completed it for compliance with the FAA's regulations. These supervisory acts establish that DynAir directed and controlled Wiseman's work.

¶ 16 DynAir's lack of complete freedom in directing the method or manner of work is not dispositive of its employment relationship with Wiseman. PDS only directed Wiseman to show up for work at DynAir;[2] it had no control over his method of work. Furthermore, the FAA certified Wiseman and required him to comply with FAA standards, facts consistent with Wiseman being subject to the direction and control of a special employer. *See Nation*, 145 Ariz. at 419 n. 4, 701 P.2d at 1227 n. 4 (rejecting contention that employee's status as a licensed professional nurse precluded a finding of an employment relationship). DynAir's direction and control of Wiseman's work was sufficient to imply that he consented to a contract of hire with DynAir.[3]

¶ 17 Wiseman also contends that his subjective perception determines whether he accepted control or direction from DynAir. Further, he asserts that a jury question concerning implied consent exists because he did not perceive himself as having accepted direction or control from DynAir. However, as noted above, "for the lent employee doctrine to apply, the employee need only be aware of and consent to the lent employee relationship. He need not be aware of and consent to the legal consequences of such facts." *Avila*, 179 Ariz. at 504, 880 P.2d at 724.

¶ 18 Wiseman knew that PDS was a labor contractor and that as an employee of PDS he would be assigned to work for another employer. His subjective conviction that he did not receive direction or control from DynAir over the *manner* of his work does not

**2.** Wiseman indicated in his statement of facts that he was required to check-in with Pfeifer, the PDS administrator at DynAir, at the beginning of 'each of his workdays. However, his deposition testimony does not clearly support this statement. Instead, the testimony appears to indicate that he reported to Pfeifer on his first day of work at DynAir. In any event, even if he checked in with Pfeifer each workday, there is no evidence that Pfeifer ever gave him a work order for a task to be done at DynAir. Pfeifer managed the contract between DynAir and PDS. His duties involved recruiting workers, hiring and firing, payroll, and similar administrative tasks.

**3.** The requisite control over a skilled worker to satisfy the lent employee test is discussed in *Larson's Workers' Compensation Law:*

... the "control" which the special employer must assume need not extend to directing the technical details of a skilled employee's activity. This would mean that skilled employees would hardly ever be employees under the [workmen's compensation] act. What is essential, according to the Supreme Court of Arizona, is the right to control the time and place of services, the person for whom rendered, and the degree and amount of services.

A. Larson, *Larson's Workers' Compensation Law*, section 48.30 (1997)(citing *Carnes v. Industrial Comm'n*, 73 Ariz. 264, 240 P.2d 536 (1952)).

change the objective facts necessary to show implied consent to a contract of hire. As a matter of law, he worked under an implied contract of hire with DynAir.

¶ 19 Wiseman also asserts that his relationship to DynAir is analogous to a subcontractor's employee's relationship to a general contractor. The record does not support this argument. Wiseman admitted that he most frequently worked by himself and not as part of a crew. When he did work as part of a crew, unlike a subcontractor with its employees, PDS did not supervise him. Even if we accept this reasoning, Wiseman would still have an employee relationship with DynAir because his case would fall within the statutory employer doctrine.[4] However, the "statutory employer doctrine governs only situations where an 'employer (owner or general contractor) procures work to be done for him by a contractor....'" *Word*, 135 Ariz. at 519, 662 P.2d at 1026. Wiseman acknowledges on appeal that PDS was not a subcontractor of DynAir. His argument that he envisioned himself as working for a subcontractor fails.[5]

¶ 20 Wiseman cites cases from other states that are factually distinguishable or inconsistent with Arizona case law. In *Kowalski v. Shell Oil Co.*, 23 Cal.3d 168, 151 Cal.Rptr. 671, 588 P.2d 811 (1979), Kowalski's employer, the C. Norman Peterson Company, was not a labor contractor but instead contracted with Shell to perform maintenance work at a refinery. Kowalski worked with a crew of Peterson carpenters and a Peterson foreman supervised him. Peterson supplied its employees with tools, equipment, hard hats, and Peterson identification badges. The court affirmed the jury's finding that Kowalski was not Shell's special employee. Uncontradicted evidence persuaded the court that Shell did not exercise control over Kowalski's duties because Peterson's foreman supervised him at all times. Here, in contrast, PDS is a labor contractor; Wiseman did not work with a PDS supervised crew, and PDS never provided him with equipment.

¶ 21 Similarly, in *Appeal of Longchamps Electric, Inc.*, 137 N.H. 731, 634 A.2d 994 (1993), Longchamps, although not a labor contractor, agreed to supply its electricians' services to Mikol. A Longchamps' employee supervised the injured employee while he worked at Mikol, and Mikol neither supervised nor instructed him concerning his work. Mikol did not contract for the services of any individuals but rather for the services of a Longchamps electrical crew. The appellate court affirmed the lower court's finding that the worker was an employee of Longchamps only. In this case, DynAir contracted for individual PDS employees, not for a crew of employees under PDS's direct work supervision.

¶ 22 In both *Barajas v. USA Petroleum Corp.*, 184 Cal.App.3d 974, 229 Cal.Rptr. 513 (1986), and *Novenson v. Spokane Culvert & Fabricating Co.*, 91 Wash.2d 550, 588 P.2d 1174 (1979), labor contractors provided the workers to the defendant companies. *Barajas* held that it could not say as a matter of law that the worker had an employment relationship with the assigned special employer, noting that the existence of the special employment relationship is generally a question for the trier of fact. 229 Cal.Rptr. at 517. *Novenson* concluded that consent to an employment agreement with the assigned employer should not be imputed to the employee as a matter of law and that material factual questions existed concerning his consent to enter into a contract of hire.[6]

---

4. The statutory employer statute, A.R.S. § 23–902(B), provides that

[w]hen an employer procures work to be done for him by a contractor over whose work he retains supervision or control, and such work is a part or process in the trade or business of the employer, then such contractors and the persons employed by him, and his subcontractor and persons employed by the subcontractor, are ... employees of the original employer.

5. We note that the subcontractor argument would not help Wiseman's position anyway. Under A.R.S. § 23–902(B), a statutory employer is immune from tort liability.

6. In *Lindsey v. Bucyrus–Erie*, Division Two adopted the dissent's criticism of the *Novenson* majority on the issue of laborers provided by a labor broker. 161 Ariz. at 458, 778 P.2d 1353.

¶ 23　California's and Washington's case law makes the existence of the lent employee/special employer relationship a question of fact. In Arizona, by contrast, the circumstances of each case determine whether the issue is one of fact or law. If the facts of the employment are undisputed, the issue is decided as a matter of law. *See Avila,* 179 Ariz. at 505, 880 P.2d at 725.

### CONCLUSION

¶ 24　The undisputed evidence supports the trial court's ruling that Wiseman impliedly consented to a contract of hire with DynAir and thus that DynAir is immune from tort liability for his injuries. Accordingly, we affirm the trial court's summary judgment in favor of DynAir.

EHRLICH, P.J., and TOCI, C.J., concur.