IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

TIMOTHY LEE, a single man,
*Plaintiff/Appellant/Cross-Appellee,*

*v.*

M AND H ENTERPRISES, INC. dba
MARTIN HARRIS CONSTRUCTION, a Nevada corporation,
*Defendant/Appellee/Cross-Appellant,*

*and*

WAL-MART STORES, INC. dba SAM'S
CLUB, a foreign corporation,
*Defendant/Appellee.*

No. 1 CA-CV 13-0257
FILED 4-21-2015

Appeal from the Superior Court in Maricopa County
No.  CV2010-001154
The Honorable Mark H. Brain, Judge
The Honorable Joseph B. Heilman, Judge, *Retired*
The Honorable Donald Daughton, Judge, *Retired*

**AFFIRMED**

COUNSEL

Hopkins Law Offices PLC, Phoenix
By Stephen M. Hopkins
*Counsel for Plaintiff/Appellant/Cross-Appellee*

Lewis Brisbois Bisgaard & Smith LLP, Phoenix
By James K. Kloss
*Counsel for Defendant/Appellee/Cross-Appellant M and H Enterprises*

The Law Office of Don D. Skypeck
By Douglas H. Fitch
*Counsel for Defendant/Appellee Wal-Mart Stores, Inc.*

---

**OPINION**

Judge Michael J. Brown delivered the opinion of the Court, in which Presiding Judge Kent E. Cattani and Judge Margaret H. Downie joined.

---

**B R O W N,** Judge:

**¶1**        Timothy Lee suffered serious injuries while performing clean-up duties during the final stages of construction at a Sam's Club store located on property owned by Wal-Mart Stores, Inc. ("Wal-Mart").  Lee was employed at the time by Able Body Labor ("Able Body")[1], which supplied workers for M&H Enterprises, Inc. ("M&H"), the general contractor on the project.  After Lee successfully pursued a workers' compensation claim against Able Body, he sued Wal-Mart and M&H for negligence.

**¶2**        On appeal, Lee challenges the trial court's orders granting summary judgment in favor of Wal-Mart and granting judgment as a matter of law in favor of M&H.  The issues we address are:  (1) whether Lee, as an employee of an independent contractor, could properly assert a vicarious liability negligence claim against Wal-Mart; (2) whether Lee presented evidence creating a material factual dispute as to whether Wal-Mart retained some control over his work and was therefore directly negligent; and (3) whether the lent employee doctrine relieves M&H from liability because Lee elected to pursue a workers' compensation award for his injuries.  For the following reasons, we affirm.

---

[1]        The full name of the subcontractor is Professional Staffing, A.B.T.S., Inc., d/b/a Able Body Labor.  As alleged in the complaint, Able Body is a "manpower staffing agency."

## BACKGROUND

¶3         At the request of M&H, Able Body provided workers to perform clean-up work at the Sam's Club construction site. Lee, who began employment with Able Body in 2007, had been regularly assigned such work over the course of several months. In January 2009, shortly before the planned opening date of the store, Able Body directed Lee to report for work at the construction site. An M&H representative instructed Lee to clean the tops of various freezers, which were roughly ten feet high. Lee used an onsite scissor-lift to access the portion that needed cleaning, and proceeded to remove debris. Next to the ten-foot freezers, separated by a small section of fiberboard, were taller freezers, roughly sixteen feet high. Rather than use the scissor-lift to reach the taller freezers, Lee attempted to access them by stepping on the fiberboard. While doing so, the fiberboard collapsed and Lee was seriously injured when he fell to the floor.

¶4         Lee sued Wal-Mart and M&H, alleging they each acted negligently by failing to maintain a safe place to work, free of hidden dangers. Lee also alleged that both Wal-Mart and M&H were in control of the property and therefore owed him a "non-delegable duty to . . . provide a safe place to work, free of hidden dangers." Although he acknowledged receipt of an award for workers' compensation benefits (based on his claim against Able Body), Lee asserted the award was inadequate to compensate him for his injuries.

¶5         M&H moved for summary judgment, asserting that the lent employee doctrine barred Lee's cause of action because he had elected to pursue his statutory right to obtain a workers' compensation award for his injuries. The trial court denied the motion. After reassignment of the case to a different judge, M&H filed a second motion for summary judgment. M&H argued that if it had a duty to control Lee's actions, then his only remedy was workers' compensation; but if M&H had no duty to control, then as a matter of law it could not have breached any duty to Lee.

¶6         Wal-Mart also filed a motion for summary judgment, arguing that as a landowner, it did not owe a non-delegable duty to Lee because his injury occurred while he was working as an employee of an independent contractor. Wal-Mart also asserted it did not contractually assume responsibility or exercise actual control over the work of M&H, Able Body, or Lee. Lee countered that, notwithstanding his status as an employee of a subcontractor and the terms of Wal-Mart's contract with M&H, a landowner has a non-delegable duty to provide a reasonably safe place for

business invitees and there was evidence that Wal-Mart and M&H exercised shared control over the premises at the time of the accident.

¶7           The trial court denied M&H's motion but granted Wal-Mart's, finding that Wal-Mart had hired M&H to build the Sam's Club and thereby "effectively relinquished control of (and liability for), the project to [M&H]" through its contract.  The court explained that although the project was nearing completion and Wal-Mart possibly had "taken possession" of part of the site, there was "nothing in the record suggesting that Wal-Mart had taken possession or control of the area in which Lee was working, nor that it controlled Lee's work."  The court denied Lee's subsequent motion for reconsideration and/or new trial, and entered judgment in favor of Wal-Mart.

¶8           A jury trial ensued on Lee's claim against M&H.  At the close of Lee's presentation of evidence, M&H moved for judgment as a matter of law, reasserting its argument that Lee's claims were barred based on the lent employee doctrine.  The court granted the motion, explaining that a contract for hire was implied from the circumstances and finding that M&H exercised control over Lee and no reasonable jury could conclude otherwise.  Therefore, applying the lent employee doctrine, the court found that the exclusive remedy of workers' compensation barred Lee from pursuing civil damages.

¶9           The court entered a final judgment in favor of M&H.  Lee timely appealed and M&H cross-appealed the denial of its second motion for partial summary judgment.

## DISCUSSION

### I.      Wal-Mart's Motion for Summary Judgment

¶10           Summary judgment is proper when "there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law."  Ariz. R. Civ. P.  56(a).  We review de novo the grant of summary judgment and view the evidence in the light most favorable to the non-moving party.  *Read v. Keyfauver*, 233 Ariz. 32, 35, 308 P.3d 1183, 1186 (App. 2013).

¶11           Lee argues the trial court erred in granting summary judgment because, pursuant to Restatement (Second) of Torts ("Restatement") § 422 (1965), Wal-Mart necessarily retained a non-delegable duty, as the landowner, to keep its premises reasonably safe for

business invitees. Lee further asserts the court erred because Wal-Mart retained control over his work and is therefore directly liable for his injuries.

## A. Premises Liability (Vicarious) under Restatement § 422(a)

**¶12** Arizona courts have consistently recognized that a landowner is not liable for the negligent conduct of an independent contractor unless the landowner has been independently negligent. *See Welker v. Kennecott*, 1 Ariz. App. 395, 401-04, 403 P.2d 330, 336-39 (1965) (citing Restatement (First) of Torts § 409 (1934) ("Except as stated in §§ 410 to 429, the employer of an independent contractor is not subject to liability for bodily harm caused to another by a tortious act or omission of the contractor or his servants.")); *see also E.L. Jones Constr. Co. v. Noland*, 105 Ariz. 446, 454, 466 P.2d 740, 748 (1970) (recognizing the general rule that a property owner is not liable for the negligence of an independent contractor); Restatement § 409 cmt. b (explaining that the rule stated in this section, "as to the non-liability of an employer for physical harm caused to another by the act or omission of an independent contractor, was the original common law rule"). The explanation "most commonly given" for this rule is based on the notion that because "the employer has no power of control over the manner in which the work is to be done by the contractor, it is to be regarded as the contractor's own enterprise, and he, rather than the employer, is the proper party to be charged with the responsibility of preventing the risk, and bearing and distributing it." Restatement § 409 cmt. b.[2]

**¶13** As our supreme court has noted, however, "many exceptions to the rule of nonliability have now been recognized so that even where the employer has not been personally negligent, he may be vicariously liable for the contractor's negligence." *Ft. Lowell-NSS Ltd. P'ship v. Kelly*, 166 Ariz. 96, 101, 800 P.2d 962, 967 (1990).[3] Most, if not all, of the exceptions fall into three broad categories:

---

[2] In many reported decisions, as well as the Restatement, the terms employer, possessor of land, and landowner are used interchangeably in discussing the liability of an entity that hires a general contractor to perform construction work. For purposes of our analysis relating to Lee's claims against Wal-Mart, the terms have the same meaning.

[3] As recognized in *Ft. Lowell*, "[a]lthough no fault of the possessor need be shown, the negligence of the independent contractor must be

1. Negligence of the employer in selecting, instructing, or supervising the contractor.

2. Non-delegable duties of the employer, arising out of some relation toward the public or the particular plaintiff.

3. Work which is specially, peculiarly, or "inherently" dangerous.

Restatement § 409 cmt. b.[4]

**¶14**   According to Lee, Wal-Mart had a non-delegable duty to keep the premises safe and is therefore vicariously liable under Restatement § 422, which describes an employer's general scope of liability for injuries resulting from work performed on land and structures:

> A possessor of land who entrusts to an independent contractor construction, repair, or other work on the land, or on a building or other structure upon it, is subject to the same liability as though he had retained the work in his own hands to others on or outside of the land for physical harm caused to them by the unsafe condition of the structure
>
> (a) while the possessor has retained possession of the land during the progress of the work, or
>
> (b) after he has resumed possession of the land upon its completion.

**¶15**   Lee argues he was a business invitee when his injury occurred on Wal-Mart's property, and that under Restatement § 422, possessors of land have a non-delegable duty to provide such invitees a safe place to work. In *Welker*, however, this court rejected the argument that a

---

proven before liability may attach to the employer." 166 Ariz. at 104, 800 P.2d at 970. For purposes of analyzing Lee's vicarious liability claim, we assume, without deciding, he would be able to satisfy his burden.

[4] These exceptions are generally set forth in Restatement §§ 410–415, which deal with direct liability of a landowner, and §§ 416–429, which relate to vicarious liability of a landowner based on the negligence of an independent contractor. *See Rause v. Paperchine, Inc.*, 743 F. Supp. 2d 1114, 1119 (D. Ariz. 2010).

landowner owes a non-delegable duty under Restatement § 422 to an employee of an independent contractor. 1 Ariz. App. at 404, 403 P.2d at 339. Thus, under *Welker*, Wal-Mart did not have a non-delegable duty to provide Lee a safe place to work because Lee was working as an employee of an independent contractor at the time he was injured.

¶16     A primary issue in *Welker* was whether the landowner, a mining company, was negligent in causing the death of an employee of its general contractor. 1 Ariz. App at 397, 403 P.2d at 332. The victim's family alleged that the landowner had a non-delegable duty of care for the employees of the general contractor under Restatement § 422.[5] *Id.* at 401, 403 P.2d at 336. On appeal, we held that the duties outlined in Restatement § 422 "are not owed to employees of an independent contractor" performing construction work. *Id*. at 404, 403 P.2d at 339. In doing so, we reasoned in part that because workers' compensation is essentially paid by the landowner through a negotiated contract price with the contractor, the landowner should not be held liable for the injuries to the contractor's workers. *Id*. We further reasoned that the various distinctions developed as exceptions to the general rule of non-liability "are nebulous at best" and "become so highly confusing as to be undesirable when applied to employees of an independent contractor doing construction work." *Id*.

¶17     After *Welker,* this court continued to recognize that landowners are not liable under Restatement § 422 for injuries suffered by employees of independent contractors engaged in construction activities. *See Allison Steel Mfg. Co. v. Superior Court for the County of Pima,* 22 Ariz. App. 76, 81, 523 P.2d 803, 808 (1974) (citing *Welker* and noting that if landowner had no control or active role in bringing about the dangerous condition that caused the plaintiff's injury, it could not be held liable under a theory of non-delegable duty); *Parks v. Atkinson,* 19 Ariz. App. 111, 114-15, 505 P.2d 279, 282-83 (1973) (upholding summary judgment in favor of the landowner by relying on *Welker* for the proposition that Restatement § 422 did not apply to an employee of an independent contractor who fell from a scaffold at the site)*; see also Mason v. Arizona Pub. Serv. Co.*, 127 Ariz. 546, 551, 622 P.2d 493, 498 (App. 1980) (citing *Welker* and recognizing that "in the absence of retained control, the duties owed by a landowner to third persons are not

_____

[5]     The court in *Welker* analyzed Restatement (First) of Torts § 422 (1934), which for purposes of this case is not materially different from the current version of Restatement § 422. *See* Restatement § 422 Reporter's Notes.

owed to the employees of an independent contractor"). Lee has not cited, nor has our research revealed, any Arizona reported decision that has overruled or otherwise questioned the validity of *Welker* as it pertains to Restatement § 422.[6]

**¶18** Lee argues that our supreme court's decision in *Ft. Lowell* impliedly overruled *Welker*. In *Ft. Lowell*, the supreme court explained that if an exception applies, a landowner may be vicariously liable for a contractor's negligence in failing to maintain a safe workplace. 166 Ariz. at 101, 800 P.2d at 967. But, unlike this case, *Ft. Lowell* did not involve a claim brought by an employee of an independent contractor. 166 Ariz. at 98, 800 P.2d at 964. Thus, *Ft. Lowell* cannot be said to have overruled *Welker*. Moreover, referencing this court's decision in *Koepke v. Carter Hawley Hale Stores, Inc.*, 140 Ariz. 420, 423, 682 P.2d 425, 428 (App. 1984), the supreme court in *Ft. Lowell* noted:

> Prior to *Koepke*, Arizona courts considered section 422 only in the context of finding it was not applicable to suits by employees of independent contractors. As the *Koepke* court noted, the policy underlying this refusal to apply Restatement § 422 to such employees is unrelated to the question of liability for injuries *to other invitees*.

*Ft. Lowell*, 166 Ariz. at 102 n.6, 800 P. 2d at 968 n.6 (emphasis added.)

**¶19** In *Rause*, the federal district court analyzed *Welker* and *Ft. Lowell* in concluding that a paper mill owner was not vicariously liable for damages resulting from the death of an employee of a subcontractor at the mill. 743 F. Supp. 2d at 1119. The surviving members of the deceased worker's family sued the mill owner, alleging premises liability under Restatement § 422(a), and claiming that the owner and possessor of the

---

[6] In *Lewis v. N.J. Riebe Enterprises, Inc.*, 170 Ariz. 384, 825 P.2d 5 (1992), our supreme court rejected the presumption stated in *Welker* and other cases that "without retained control, a general contractor owes absolutely no duty of care to employees of subcontractors." *Lewis*, 170 Ariz. at 389, 825 P.2d at 10. The court instead found that a "general contractor has a general duty to provide employees of subcontractors with a reasonably safe place to work." *Id.* at 388, 825 P.2d at 9. The supreme court's rejection of *Welker*, however, was related only to *Welker's* analysis of Restatement § 414. *See id.*; *Rause*, 743 F. Supp. 2d at 1124 ("*Welker* has not been overruled, and the criticism of *Welker*, as articulated in *Lewis*, does not affect *Welker*'s holding as it relates to Restatement § 422.").

paper mill had a duty to maintain the premises in a safe condition for invitees and to ensure that all construction work was completed in accordance with applicable safety regulations. *Id.* The court relied on *Welker* and noted that *Ft. Lowell* had "distinguished cases where the injured party is a business invitee from those where the injured party is the employee of an independent contractor." *Rause*, 743 F. Supp. 2d at 1124. Citing other Arizona cases that have recognized *Welker's* viability, including *Parks*, *Allison*, and *Koepke*, the district court found that under *Welker* the mill owner did not owe a non-delegable duty to the decedent. *Id.*

**¶20** In sum, this court's holding in *Welker*—that Restatement § 422 does not constitute an exception to the general rule that a landowner is not liable for injuries suffered by an employee of an independent contractor performing work on the property, 1 Ariz. App. at 404, 403 P.2d at 339—remains the law in Arizona. For that reason, Wal-Mart, as the landowner, did not owe Lee a non-delegable duty of care under Restatement § 422 because he was working as an employee of an independent contractor at the time he sustained injuries.[7]

## B. Retained Control - Restatement § 414

**¶21** Lee argues that Wal-Mart "retained some control" over his work and is therefore directly liable for his injuries under Restatement § 414. Specifically, Lee notes that during a final walk-through inspection of the construction site, a Wal-Mart representative requested that the tops of the freezers be cleaned, and thus contends his fall while cleaning those freezers was a result of Wal-Mart's direct orders.

**¶22** Restatement § 414 addresses the direct liability of a landowner based on a theory of retained control:

> One who entrusts work to an independent contractor, but who retains the control of any part of the work, is subject to

---

[7] Although Lee states Wal-Mart violated a duty to warn of hidden dangers, the only exception to the general rule of nonliability that Lee cites in his opening brief is Restatement § 422. Because Lee has failed to develop this argument by tethering it to a recognized exception that extends to employees of independent contractors, we do not address it. *See In re U.S. Currency in the Amount of $26,980.00*, 199 Ariz. 291, 299, ¶ 28, 18 P.3d 85, 93 (App. 2000) (refusing to consider arguments offered without development or citation to supporting legal authority).

> liability for physical harm to others for whose safety the employer owes a duty to exercise reasonable care, which is caused by his failure to exercise his control with reasonable care.

Thus, to trigger liability under Restatement § 414, a landowner "must have retained some measure of control not over the premises of the work site, but over the actual work performed." *See Lewis*, 170 Ariz. at 390, 825 P.2d at 11. The scope of the landowner's duty, if any, "is determined by the amount of control" the landowner retained over the construction work performed by a contractor. *Id.* at 389, 825 P.2d at 10 (determining the parameters of a general contractor's duty based on the control it retained over the subcontractor's work). Both the governing contractual provisions and the actual exercise of control over work are "relevant considerations" in determining whether a landowner retained control. *Id.* at 390, 825 P.2d at 11.

¶23 Generally, the existence of a duty is a question of law for the court. *See Lewis,* 170 Ariz. at 387, 825 P.2d at 8. Because the issue of a breach of duty is inextricably linked with the scope of retained control, however, "the issue of retained control is also a question of fact which ordinarily should be left to the fact finder." *Id.* at 389, 825 P.2d at 10 (emphasis omitted). Nonetheless, a trial court may properly grant summary judgment in favor of a landowner if no reasonable jury could conclude the landowner retained control over the work at issue. *Id.* (citing *Orme School v. Reeves*, 166 Ariz. 301, 802 P.2d 1000 (1990)).

¶24 Applying these principles here, the contract between Wal-Mart and M&H provided that M&H had control of the construction site and that Wal-Mart disclaimed all responsibility for the construction personnel of the contractor (M&H) and its subcontractors (Able Body):

> Neither Owner [Wal-Mart] nor Contractor [M&H] has the right and shall not seek, to exercise any control over the other party, its employees, or its agents. Contractor shall control the methodology for performing the Work to meet Owner's specifications. Each party shall be solely responsible for hiring, firing, promoting, demoting, rates of pay, benefits, and other terms and conditions in regard to its own employees. Neither Contractor nor any of its employees or agents may be considered Owner's agents or employees for any purpose and have no authority to act or purport to act on Owner's behalf.

. . . .

> Notwithstanding the foregoing provisions of this Article 12, the Owner, through the establishment of minimum standards for Project site access procedures, *does not assume responsibility for the control of the construction personnel of the Contractor or its Subcontractors . . . with safety or security measures*, or for implementation and enforcement of site access, security and safety measures, all of which shall remain solely and exclusively the responsibility of the Contractor.

(Emphasis added). Under the contract's plain language, M&H controlled both the construction personnel and the implementation of onsite safety measures.

¶25 Moreover, even assuming Wal-Mart instructed M&H to clean the tops of the freezer units where Lee's accident occurred, that conduct would be insufficient to constitute the exercise of actual control as contemplated by Restatement § 414. Wal-Mart's exercise of its right to inspect the area in connection with final walkthroughs to ensure compliance with its contract with M&H did not amount to taking direct control of M&H such that it retained "a right of supervision that [M&H was] not entirely free to do the work in [its] own way." Restatement § 414 cmt. c. Wal-Mart had reserved and exercised "*only* the right to inspect the construction work to see that the contract specifications are met while [M&H] control[ed] how and when the work [was] to be done[.]" *Lewis,* 170 Ariz. at 391, 825 P.2d at 12 (emphasis added); *see also Koepke,* 140 Ariz. at 426, 682 P.2d at 431 (finding lack of actual control because "there [was] no evidence indicating that [the landowner] had any authority to direct the manner in which the contractors worked").

¶26 We conclude no genuine dispute of material fact exists regarding Wal-Mart's lack of control over Lee's work for purposes of Restatement § 414, either by the terms of its contract with M&H or by its actions. As such, summary judgment in favor of Wal-Mart was appropriate.

## II. M&H's Motion for Judgment as a Matter of Law

¶27 We review a trial court's decision on a motion granting judgment as a matter of law de novo. *Sec. Title Agency, Inc. v. Pope,* 219 Ariz. 480, 492, ¶ 51, 200 P.3d 977, 989 (App. 2008). The trial court properly grants judgment as a matter of law if "a party has been fully heard on an issue and

there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue[.]"  Ariz. R. Civ. P. 50(a)(1).

¶28        As a threshold issue, Lee contends that M&H has waived its argument that Lee was its employee by making several binding admissions to the court that Lee was an employee of Able Body.  An employee may have two employers, however, both of which are immune to tort liability. *See Lindsey v. Bucyrus-Erie*, 161 Ariz. 457, 458, 778 P.2d 1353, 1354 (App. 1989); *Nation v. Weiner*, 145 Ariz. 414, 417-18, 701 P.2d 1222, 1225-26 (App. 1985) (explaining the admission that one party is the employee's employer does not "prevent" another party from being the employee's employer). Lee has not cited, and our review of the record has not revealed, any admission by M&H that it was not Lee's employer.  We therefore find no waiver.

¶29        The Arizona Constitution directs the legislature to enact workers' compensation laws protecting workers injured or killed "from any accident arising out of and in the course of" employment.  Ariz. Const. art. 18, § 8.  This requirement arose from the view that work-related injuries inevitably accompany industrialization, the costs of which should be borne by the responsible industry and its consumers.  *See Ford v. Revlon, Inc.*, 153 Ariz. 38, 46, 734 P.2d 580, 588 (1987) (Feldman, V.C.J., concurring).

¶30        Under Arizona's workers' compensation system, an employee seeking compensation for an injury must choose between pursuing a statutory claim with the Industrial Commission and filing a common law tort action.  *Anderson v. Indus. Comm'n*, 147 Ariz. 456, 457, 711 P.2d 595, 596 (1985).  The choice to sue in tort is made by a written rejection of the compensation system filed with the employer before injury.  Ariz. Rev. Stat. ("A.R.S.") § 23-906(B), (C).  If an employee fails to file a rejection, the compensation system is the employee's "exclusive remedy against the employer or any co-employee acting in the scope of his employment[.]" A.R.S. § 23-1022(A).  Thus, an injured employee who has failed, before injury, to reject the workers' compensation system may not maintain a tort action against his or her employer.  *Anderson*, 147 Ariz. at 457, 711 P.2d at 596.  Because Lee never opted out of the workers' compensation system prior to his injury, his sole remedy against any of his employers for injuries he sustained is under that system.

¶31        Lee argues nonetheless that the trial court erred in granting judgment as a matter of law in favor of M&H because he was not an employee of M&H, thereby placing him outside the law that prohibits employees from pursuing a tort claim when they have received

compensation through the workers' compensation system. "When a labor contractor . . . supplies or 'lends' its employee to another employer, the result may be an arrangement in which one employee has two employers." *Araiza v. U.S. W. Bus. Res., Inc.*, 183 Ariz. 448, 452, 904 P.2d 1272, 1276 (App. 1995). In this kind of situation the lending employer, Able Body, is known as the "general employer" and the borrowing employer, M&H, is the "special employer." 5 Arthur Larson and Lex K. Larson, *Larson's Workers' Compensation Law* § 67.01 (2014). "The significance of this arrangement is that both employers are liable for workers' compensation and both are immune from tort liability for injuries received by the employee on the job pursuant to A.R.S. § 23–1022(A)." *Araiza*, 183 Ariz. at 452, 904 P.2d at 1276; *see also Wiseman v. DynAir Tech of Ariz., Inc.*, 192 Ariz. 413, 416, ¶ 10, 966 P.2d 1017, 1020 (App. 1998).

¶32 Three elements must be proven to establish that a "lent employee" has become the employee of the "special employer":

> (a) the employee has made a contract of hire, express or implied, with the special employer;
>
> (b) the work being done is essentially that of the special employer; and
>
> (c) the special employer has the right to control the details of the work.

*Word v. Motorola, Inc.*, 135 Ariz. 517, 520, 662 P.2d 1024, 1027 (1983). "When all three of [these] conditions are satisfied in relation to both employers, both employers are liable for work[ers'] compensation." *Id*. In cases involving labor contractors, "employers obtaining workers from [a labor service provider] have usually, but not invariably, been held to assume the status of special employer." *Id*. at 520 n.5, 662 P.2d at 1027 n.5 (internal quotation omitted).

¶33 Lee asserts there is no evidence that M&H exercised sufficient control over Lee to render him an M&H employee under the lent employee doctrine. Because Lee does not dispute the existence of the first two elements, only the third factor—whether M&H had the right to control the details of Lee's work—is relevant here. In deciding whether an employer has the right to supervise and control, we consider the totality of the circumstances, including, but not limited to:

> [T]he duration of the employment; the method of payment; who furnishes necessary equipment; the right to hire and fire;

13

who bears responsibility for workmen's compensation insurance; the extent to which the employer may exercise control over the details of the work, and whether the work was performed in the usual and regular course of the employer's business.

*Avila v. Northrup King Co.*, 179 Ariz. 497, 501, 880 P.2d 717, 721 (App. 1994). The key for this analysis is whether the special employer has "the *right* to supervise and control [the work], *not* the *exercise* of that right." *Nation*, 145 Ariz. at 418, 701 P.2d at 1226 (emphasis added).

¶34        On this record, we conclude that M&H had the right to supervise and control the work Lee was performing at the Sam's Club construction site. Of the 100-150 subcontractor employees actively involved in the construction project, Able Body was the only subcontractor that did not have an onsite foreman supervising its workers. As the trial court noted, "[u]nlike every other subcontractor out there, there were no [] foremen or anyone else supervising [Lee] and his [co-worker]. They were on their own. It wasn't like the electricians who'd have people telling them how to do their job." Indeed, by Lee's own testimony, M&H was his "boss" and he was required to follow its instructions each day. Furthermore, Lee's construction safety expert admitted that M&H had control of the work site and Lee's work.

¶35        Finally, the record shows that M&H exercised actual control over Lee when he was at the construction site. For example, when he arrived each morning, Lee would locate the M&H superintendents and receive his instructions for the day. On the morning of the accident, Lee followed this same procedure and was directed by a superintendent for M&H to clean the tops of the freezers. Therefore, Lee was an employee of M&H under the lent employee doctrine.

¶36        Lee argues that M&H did not exercise control over him because Able Body's safety rules controlled his conduct at the worksite. Under these rules, Able Body was responsible for compensating its workers, maintaining workers' compensation insurance, and providing safety equipment and tools. However, as noted above, Able Body's status as Lee's general employer does not exclude the possibility that M&H also had control over Lee, and therefore was his special employer. *See Araiza*, 183 Ariz. at 452, 904 P.2d at 1276. Whether Able Body maintained some element of control over Lee through its safety work rules does not affect whether M&H exercised control over Lee under the lent employee doctrine. *See Word*, 135 Ariz. at 520, 662 P.2d at 1027.

¶37        Lee also argues that public policy does not support granting tort immunity unless the employer is liable for workers' compensation benefits.  Lee relies on *Tarron v. Bowmen Machine & Fabricating, Inc.*, 225 Ariz. 147, 235 P.3d 1030 (2010), and *Inmon v. Crane Rental Servs., Inc.*, 205 Ariz. 130, 67 P.3d 726 (App. 2003), to support this contention.  However, neither *Tarron* nor *Inmon* support Lee's position because those cases did not involve a temporary worker seeking to hold the special employer liable for the employee's work-related injuries.  *See Tarron*, 225 Ariz. at 150, ¶ 14, 352 P.3d at 1033 (noting that the plaintiff employee sustained injuries due to the negligence of borrowed employees loaned to the special employer by the defendant general employer), *Inmon*, 205 Ariz. at 131-32, ¶ 2, 67 P.3d at 727-28 (explaining that plaintiffs, who were steel company employees, sustained injuries due to the negligence of borrowed employees provided by the defendant general employer, a crane rental service company).

¶38        Finally, no case in Arizona applying the lent employee doctrine mandates that a special employer must have had workers' compensation coverage in place to receive tort immunity.  Instead, the special employer is liable to an injured employee for workers' compensation regardless of whether the special employer had coverage in place at the time of the employee's injury.  *See Nation*, 145 Ariz. at 420, 701 P.2d at 1228 (concluding that the plaintiff had the right to recover workers' compensation benefits from the defendant special employer if she applied for such benefits); *see also Porteadores Del Noroeste S.A. De C.V. v. Indus. Comm'n*, 234 Ariz. 53, 59-60, ¶ 21, 316 P.3d 1241, 1247-48 (App. 2014) (recognizing that a foreign company, as a special employer under the lent employee doctrine, was subject to Arizona's workers' compensation statutes for injuries sustained by an employee).  Furthermore, even if an employer does not carry workers' compensation insurance, the employee can still receive compensation through the Special Fund/No Insurance Section of the Industrial Commission of Arizona.  *See* A.R.S. § 23-907(C).  In such a scenario, the non-insured employer is then liable to the Commission for any payments made to the injured employee.  *See* A.R.S. § 23-961(G).  A special employer is not immune from liability when its employees are injured within the course and scope of their work duties.

¶39        In sum, we agree with the trial court's determination that as a matter of law, M&H was Lee's special employer under the lent employee doctrine.  Thus, we need not address M&H's cross-appeal on vicarious liability.

## CONCLUSION

¶40        Based on the foregoing, we hold that the trial court properly determined Lee could not prevail, as a matter of law, on his liability theories against Wal-Mart under Restatement §§ 422 and 414.  We also hold that the court correctly decided Lee was a lent employee of M&H, which limited his ability to recover against M&H to workers' compensation benefits.  We therefore affirm the court's judgment.



Ruth A. Willingham · Clerk of the Court
FILED: ama