NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

---

NANCY SPENCER, *Plaintiff/Appellee,*

*v.*

ALICIA ASHER, *Defendant/Appellant.*

No. 1 CA-CV 17-0631
FILED 1-8-2019

---

Appeal from the Superior Court in Maricopa County
No.  CV2016-052126
The Honorable Aimee L. Anderson, Judge (Retired)

**VACATED AND REMANDED**

---

COUNSEL

Hymson Goldstein Pantiliat & Lohr PLLC, Scottsdale
By John L. Lohr, Jr., Evan B. Schechter
*Counsel for Plaintiff/Appellee*

Lipson Neilson PC, Phoenix
By Daxton R. Watson, Michael H. Orcutt
*Counsel for Defendant/Appellant*

---

## MEMORANDUM DECISION

Judge Michael J. Brown delivered the decision of the Court, in which Presiding Judge James P. Beene and Judge James B. Morse Jr. joined.

---

**B R O W N**, Judge:

**¶1**          Alicia Asher appeals the superior court's judgment in favor of Nancy Spencer arising from various disputes between the parties in a real estate transaction.   For the following reasons, we vacate the court's judgment and remand for further proceedings.

## BACKGROUND

**¶2**          In February 2016, Spencer entered into a Contract for Deed ("Contract") to sell her house (the "Property") to Asher for $275,000.  The Contract required a down payment of $76,704 upon signing, monthly payments of $1,381 beginning March 15, 2016, and a balloon payment in January 2019, at which time Spencer would transfer title to Asher.  The parties agreed that Weststar Pacific Mortgage & Escrow ("Weststar") would process the monthly payments.   Late payments would trigger the Contract's default provisions, which required Spencer to provide Asher with 14 days' notice to cure the default and then 15 additional days' notice before Spencer could re-take possession of the Property or pursue other remedies.  The Contract also provided that Asher would "take possession of the property . . . upon execution of this [C]ontract," however, the parties signed an addendum that allowed Spencer to remain on the Property until March 15, 2016. Two days after signing the Contract, the parties signed and recorded a one-page document titled Assignment of Contract for Deed ("Assignment"), which assigned all of Spencer's "right, title, and interest" in the Contract to Asher.

**¶3**          Spencer refused to deliver possession on March 15 because she believed Asher had not timely made her first payment.  On March 20, Spencer informed Asher she would be willing to deliver possession if Asher would go to Weststar with her to find out why Weststar was not disbursing the payment to Spencer.   The next day, Spencer texted Asher about the Assignment, noting "we both did not know what it said" and it "sh[ou]ld not [have] been includ[e]d or recorded."  On March 21, at the behest of her attorney, Spencer signed and recorded an affidavit of scrivener's error

stating she had "inadvertently signed and recorded" the Assignment. Spencer's attorney then informed Asher that if she also signed an affidavit of scrivener's error and filled out forms with Weststar, he "would anticipate that [Spencer] will turn over possession of the home." Asher initially refused to sign the affidavit. Spencer, in turn, refused to grant Asher possession of the Property.

¶4        In response, Asher filed (1) an eviction action in justice court, (2) a breach of contract action in justice court, and (3) a request for an injunction against harassment. Asher relied on the erroneous Assignment in those proceedings, claiming she was at least entitled to possession because the Assignment gave her the contractual rights of the seller.

¶5        In April 2016, Spencer requested under Arizona Revised Statutes ("A.R.S.") section 12-1101 et. seq. that Asher sign the affidavit of scrivener's error and return it within 20 days pursuant to A.R.S. § 33-420 (C). When Asher did not return the affidavit, Spencer filed a complaint in superior court, asserting claims for fraud/negligent misrepresentation, breach of contract, breach of the implied covenant of good faith and fair dealing, and wrongful recordation of a lien in violation of § 33-420. Asher counterclaimed for breach of contract and declaratory relief. On May 7, 2016, Asher signed an exact replica of Spencer's affidavit of scrivener's error. During the course of the litigation, Asher gained possession of the Property using self-help means, and Spencer filed an amended complaint adding a claim of trespass and a request for an injunction.

¶6        The parties filed competing motions for summary judgment. The court granted Spencer's motion and denied Asher's cross-motion. As reflected in the court's final judgment, the court rescinded the Contract and awarded Spencer $22,500 in damages for trespass and a violation of § 33-420, as well as $73,172 in attorneys' fees and $3,014.20 in costs. This timely appeal followed.

**DISCUSSION**

¶7        We review the superior court's grant of summary judgment de novo, viewing the evidence in the light most favorable to the non-moving party. *Lee v. M & H Enters., Inc.*, 237 Ariz. 172, 175, ¶ 10 (App. 2015). Summary judgment is appropriate when "there is no genuine dispute as to

any material fact and the moving party is entitled to judgment as a matter of law." Ariz. R. Civ. P. 56(a).[1]

### A.  Mootness

¶8          After the superior court issued its judgment, Asher filed her notice of appeal and ceased making payments on the Contract. Spencer then proceeded to forfeit Asher's interest in the Property. *See* A.R.S. §§ 33-741 to -750 (allowing the seller of real property to forfeit a purchaser's interest if the purchaser defaults under a contract for deed). As far as the record before us reveals, Spencer conducted a forfeiture by notice. *See* A.R.S. § 33-745. Because the forfeiture is not part of this appeal, we address it only in the context of whether the appeal is moot.

¶9          Spencer argues that Asher's appeal is moot because regardless of the outcome she will retain the Property due to the forfeiture. *See Vinson v. Marton & Assocs.*, 159 Ariz. 1, 4 (App. 1988) ("A decision becomes moot for purposes of appeal where as a result of a change of circumstances before the appellate decision, action by the reviewing court would have no effect on the parties."). Spencer further contends that because Asher forfeited her rights, title, and interest in the Property, she forfeited not only her right to possession but also her rights to the refund of payments made towards the overall purchase price, and to any damages she may receive on potentially-successful counterclaims. Given our decision to vacate the superior court's judgment, various issues must be considered on remand, including competing claims for damages, attorneys' fees, and costs. Thus, even if there was a valid forfeiture, it does not moot Asher's appeal.

### B.  Anticipatory Repudiation

¶10          The superior court found that Asher anticipatorily repudiated the Contract by (1) recording the erroneous Assignment and (2) claiming in court proceedings that "she held the rights to the property . . . as both

---

[1]          Spencer argues that we should disregard all documents attached to Asher's reply in support of her amended motion for summary judgment, which include Asher's affidavit. The superior court considered these documents in reaching its decision; therefore, we consider them as well. *See Morris v. Sw. Sav. & Loan Ass'n*, 9 Ariz. App. 65, 67–68 (1969) (explaining that an appellate court reviews the action of the superior court in light of the record presented to that court).

the seller as well as the buyer." Asher argues the court erred because there was no "positive and unequivocal manifestation" that she would not fulfill her contractual obligations.

¶11 To establish anticipatory repudiation, "there must be a positive and unequivocal manifestation on the part of the party allegedly repudiating that he will not render the promised performance when the time fixed for it in the contract arrives." *Diamos v. Hirsch*, 91 Ariz. 304, 307 (1962). The record on this matter does not establish as a matter of law that Asher anticipatorily repudiated the Contract. First, although Asher signed the Assignment and paid for it to be recorded, the face of the document states, "prepared by, recording requested by and return to" Spencer. Second, Spencer's March 21 text to Asher describes the Assignment as a document they had recorded that "[they] both did not know what it said." Third, both parties' affidavits say, "I inadvertently signed and recorded . . . an Assignment." Finally, assuming without deciding that Asher's reliance on the erroneous Assignment was improper, her reliance occurred *after* making both the initial payment of $76,604 and her first monthly payment of $1,381 to Weststar and *after* Spencer refused to transfer possession of the Property. *See Zancanaro v. Cross*, 85 Ariz. 394, 400 (1959) (explaining that a victim of a minor or partial breach must continue to perform, but that the victim of a material or total breach is excused from further performance). Viewing the evidence and all reasonable inferences in the light most favorable to Asher, a reasonable jury could find that she did not anticipatorily repudiate the Contract. Therefore, Spencer was not entitled to summary judgment based on anticipatory repudiation.

## C. Breach of the Implied Covenant of Good Faith and Fair Dealing

¶12 Asher next argues the superior court erred in ruling that she breached the implied covenant of good faith and fair dealing. As an initial matter, we note that "[w]hether a party breached the covenant is a question of fact for the jury." *Cty. of La Paz v. Yakima Compost Co.*, 224 Ariz. 590, 604, ¶ 38 (App. 2010). Thus, that principle alone shows that summary judgment was not properly granted. Even assuming the claim can be decided as a matter of law in some instances, such is not the case here.

¶13 Arizona law implies a covenant of good faith and fair dealing in every contract. *Rawlings v. Apodaca*, 151 Ariz. 149, 153 (1986). "The essence of that duty is that neither party will act to impair the right of the other to receive the benefits which flow from their agreement or contractual relationship." *Id.* at 153–54. "A party may breach the implied covenant

even in the absence of a breach of an express provision of the contract by denying the other party the reasonably expected benefits of the agreement." *Nolan v. Starlight Pines Homeowners Ass'n*, 216 Ariz. 482, 489, ¶ 27 (App. 2007).

¶14        The superior court found that Asher breached the implied covenant of good faith and fair dealing "by coercing [Spencer] into signing the Assignment and attempting to use the Assignment to [g]ain the benefit of the bargain."   However, Asher presented evidence that Spencer (1) produced the Assignment, (2) filled in the blanks of the Assignment form, and (3) acknowledged that neither party understood the document's legal effect.   Asher's evidence creates disputed issues of material fact regarding coercion that the court could not properly resolve on summary judgment.

¶15        The superior court also found, and Spencer argues on appeal, that Asher breached the implied covenant of good faith and fair dealing by "using the Assignment multiple times to assert that she held all rights to the Contract."  According to the Restatement, "[t]he obligation of good faith and fair dealing extends to the assertion, settlement and litigation of contract claims and defenses."   Restatement (Second) of Contracts § 205 cmt. e (1981); *see also McCarthy W. Constructors, Inc. v. Phoenix Resort Corp.*, 169 Ariz. 520, 526 (App. 1991) (relying on this section of the Restatement). Stated differently, the duty of good faith and fair dealing extends to contract enforcement as well as performance.   A party breaches the implied covenant of good faith and fair dealing "by dishonest conduct such as conjuring up a pretended dispute, asserting an interpretation contrary to one's own understanding, or falsification of facts."   Restatement (Second) of Contracts § 205 cmt. e (1981).

¶16        The record confirms that Asher relied on the Assignment in three different court proceedings as proof that Spencer had assigned her rights as seller to Asher. But Asher avowed, "All I ever tried to do is possess the house that I purchased and that I continue[d] to pay for.  That was the basis of each action I started.  I just wanted possession."  As for her refusal to sign the affidavit, Asher stated she did so because "it was clear to me that [Spencer] changed her mind and refused me possession for no reason other than simply wanting to 'undo' our deal."  Whether Asher's reliance was in bad faith is a factual issue for the jury.  *See Yakima Compost Co.*, 224 Ariz. at 604, ¶ 38.

¶17        Moreover, Spencer has failed to establish as a matter of law that Asher's reliance on the Assignment (if improper) prohibited Spencer from receiving a benefit under the Contract.   Although Spencer relies on

the court's statement that Asher was "us[ing] the Assignment to [g]ain the benefit of the bargain," the standard is whether Asher prevented Spencer from receiving her contractual benefits—not merely attempted to prevent. Rev. Ariz. Jury Inst. (Civil) Contract 16 (5th ed. 2015). Thus, the court erred in granting summary judgment on Spencer's claim for breach of the implied covenant of good faith and fair dealing.

### D. Breach of Contract Counterclaim

**¶18** Asher also argues the superior court erred in finding that Spencer did not breach the contract "despite the fact that Spencer failed to deliver possession" of the Property. The court did not address Asher's counterclaim, presumably because the court determined that Asher anticipatorily repudiated the Contract, which, if true, would have excused Spencer from her obligation to transfer possession of the Property. *Thomas v. Montelucia Villas, LLC*, 232 Ariz. 92, 95, ¶ 9 (citations omitted) (explaining that an anticipatory repudiation excuses the non-breaching party from tendering performance).

**¶19** Asher's amended motion for summary judgment asserted that she had the contractual right to possess the Property on March 15, 2016. In response, Spencer argued that Asher was not entitled to possession because Asher anticipatorily repudiated the Contract and failed to provide certain information to Weststar, which meant that Spencer did not timely receive Asher's first monthly payment. Spencer also contended that Asher's exhibits proved her first payment was nine days late. The record, however, shows that Asher paid Weststar on or about March 16, but Weststar was unable to establish the escrow account and provide Spencer access to the funds until March 24, 2016 due to failures by both parties.

**¶20** Because the superior court's finding of anticipatory repudiation presumably served as the basis for which it denied Asher's motion for summary judgment on her counterclaim, we vacate the court's denial of her motion. Nevertheless, we cannot determine as a matter of law that Spencer breached the Contract by refusing to transfer possession of the Property on March 15, 2016 because whether Asher's role in the delayed disbursement was a material breach is also disputed.

### E. Violation of A.R.S. § 33-420

**¶21** Finally, Asher argues the superior court erred in awarding damages to Spencer under A.R.S. § 33-420(A) because the statute imposes liability for knowing violations only, and "there was substantial evidence

for a reasonable jury to conclude that Asher lacked knowledge of the alleged impropriety of the Assignment."

¶22        Pursuant to § 33-420,

> [a] person purporting to claim an interest in, or a lien or encumbrance against, real property, who causes a document asserting such claim to be recorded in the office of the county recorder, *knowing or having reason to know* that the document is forged, groundless, contains a material misstatement or false claim or is otherwise invalid is liable to the owner or beneficial title holder of the real property for the sum of not less than five thousand dollars, or for treble the actual damages caused by the recording, whichever is greater, and reasonable attorney fees and costs of the action.

A.R.S. § 33-420(A) (emphasis added).   The knowledge requirement imposed by § 33-420 often involves factual disputes. *See, e.g.*, *Pence v. Glacy*, 207 Ariz. 426, 429, ¶ 16 (App. 2004) (holding that whether defendant knew or had reason to know that the recorded document was invalid is a question of fact); *Coventry Homes, Inc. v. Scottscom P'ship*, 155 Ariz. 215, 219 (App. 1987) (finding genuine issues of material fact regarding whether plaintiff knew or should have known the recorded document was groundless). Furthermore, Spencer cites no authority indicating that a party may be found liable under the statute if the owner or beneficial title holder also signed and participated in recording the erroneous document. Viewing the record in the light most favorable to Asher, which includes evidence supporting her assertion that her reliance on the Assignment was not improper, *supra* ¶ 16, material disputes of fact remain as to whether Asher knew or should have known that the Assignment was groundless. Thus, we vacate the superior court's entry of summary judgment on this claim.

## CONCLUSION

¶23        The superior court erred in finding that Asher anticipatorily repudiated the Contract.  Because that finding impacts each of the court's other findings and conclusions, including the award of attorneys' fees and costs, we vacate the judgment in its entirety and remand for further proceedings consistent with this decision.  Both parties request attorneys' fees on appeal.  We deny Spencer's request as she is not the prevailing party.  Regarding Asher's request, we deny it because she failed to provide a substantive basis for the request.  *See* ARCAP 21(a)(2) ("A claim for fees

under this Rule must specifically state the statute, rule, decisional law, contract, or other authority for an award of attorneys' fees."). However, as

the prevailing party on appeal, Asher is entitled to recover taxable costs upon her compliance with ARCAP 21.



AMY M. WOOD • Clerk of the Court
FILED:  AA